## Abbey *versus* Dewey.

A purchaser at sheriff's sale, who resorts to any trick or device to get the property at an under value, and thereby purchases it for less than it would have sold for at a fair sale, renders the title so acquired utterly void.

A fraudulent intent, or an unsuccessful effort to get the land for less than it is worth, is not enough to avoid the title of the purchaser.

Where the question is whether the purchaser at sheriff's sale committed such a fraud as will vitiate his title, evidence of the value of the property is pertinent and proper.

An instruction to the jury that the fraud could not be found by them "except upon clear and undoubted proof of it" is error.

If the party alleging the fraud produced such evidence of the fact as the jury could reasonably and safely rest their consciences upon, it was sufficient.

ERROR to the Common Pleas of *Warren county*.

This was an ejectment for 106 acres of land in Columbus town-

[Abbey *v.* Dewey.]

ship, Warren county. Both parties claimed under Appollos Terry. The plaintiff, by a conveyance from Terry, dated 22d January, 1847.

The defendant showed a mortgage of the premises executed by Terry to Herman Abbey on the 10th of September, 1840; a *scire facias* upon the same to June Term, 1847; a judgment rendered on the *scire farias* for $712.15; a *levari facias* to June Term, 1848; and on the 6th of June, 1848, a sale by the sheriff to Daniel A. Dewey and E. W. Dewey for $789.

To defeat the title of the defendant under the sheriff's sale, the plaintiff proved that the Deweys had " bought off" George Cady, who attended the sale and was bidding on the property, until the defendant paid him the sum of $10 to cease bidding. The defendant, under exception by plaintiff, introduced evidence that the property sold for its full value.

The plaintiff requested the Court to charge the jury: 1. That if the jury believe that George Cady was a bidder at the sheriff's sale for the purpose of purchasing the property for himself, and that while bidding the defendant proposed or agreed to pay him $10 to withhold further bids, and that said proposition was acceded to, and Cady did cease bidding, and the property was struck down to defendant; that such conduct was fraudulent to the plaintiff, and rendered the sale void.

2. That the plaintiff was entitled to whatever the property would sell for over the amount due on the mortgage in a free, open, fair sale, without regard to the real value of the property sold, and the fact whether it sold for its actual value is not to have any weight in determining the question of fraud.

The defendant also submitted the following points:—1. Actual fraud cannot be presumed or found by a jury except upon clear and undoubted proof of it.

2. That to constitute the actual fraud, which alone can avail the plaintiff here, the jury must be satisfied beyond reasonable doubt that the defendant and Cady actually engaged in that which would amount to a conspiracy to defraud by preventing the property being bid up to as high a price as it otherwise would have been.

3. And that an arrangement was entered into by and between them for such purpose, and in consequence of it a less price was obtained for the property at said sale.

4. That if Cady bid upon the property after the alleged stipulations not to do so, it was an abandonment of the contemplated fraud if there had been any, and the purchase by the defendant would be valid:

5. The testimony of sheriff Morrison affords evidence from which the jury may infer that Cady did bid upon the property afterwards.

6. That casual conversation between the defendant and Cady

[Abbey v. Dewey.]

about it by way of banter, or propositions and loose statements made by them, are not of themselves sufficient to defeat the purchase.

7. If there was real *bona fide* bidding made by others after the propositions made as alleged by Cady to defendant, the sale would not be vitiated unless the jury are fully satisfied that more would have been bid for the property if such proposition had not been made.

8. That if the jury believe the testimony of Harriet A. Nolton, the assignment of the deed from Appollos Terry is not sufficiently proved.

The Court below (GALBRAITH, P. J.), charged the jury as follows: —" The first six points answered in the affirmative; 7th also, with this explanation, that if Cady withdrew from bidding in consequence of the offer of $10 to be paid by defendant, and relied upon that as an existing agreement, the sale would be void to the defendant. The 8th point in the negative. The plaintiff's first point answered by the answer to defendant's 7th point, and the 2d point of defendant's answered in the affirmative."

Both parties except to the charge, and at the request of plaintiff's counsel this exception sealed.

The jury found for the defendant.

Errors assigned:—1. The Court erred in receiving evidence of the value of the property as set forth in the first bill of exceptions.

2. The Court erred in answering the defendant's 1st, 2d, and 3d points unqualifiedly in the affirmative, on the same subject.

3. The Court erred in the answer to defendant's 5th point.

*Johnson, Brown,* and *Wetmore,* for plaintiffs in error.—The value of the property was not in issue, and the evidence of that should have been excluded: 1 *Green. Ev.* § 17–52; 4 *Harris* 200; 2 *Phil. Rep.* 372.

In Staines *v.* Shore, 4 *Harris* 200, where a puffer was employed, it was held that it vitiated the sale; and whether the price was more or less than the value of the thing sold, was immaterial: Pennock's Appeal, 2 *Harris* 446. If the action were to recover damages for the fraud, the difference between the price and the value would furnish a means of measuring the damages: 2 *Stark. Ev.* 270; 2 *Watts* 66; 1 *W. & Ser.* 297; 10 *Harris* 179; 5 *W. & Ser.* 60; 5 *Watts* 49.

*Church,* for defendant in error.—The plaintiff alleges actual fraud. This must be proved. In such questions great latitude must be allowed as well in repelling fraud as in proving it: 6 *Watts* 96; 5 *Barr* 230; 1 *W. & Ser.* 138; 6 *W. & Ser.* 124. The value of the property was therefore of importance in ascertaining whe-

[Abbey *v.* Dewey.]

ther there was or was not a fraud committed: 2 *Watts* 66; 3 *Ves.* 620; 12 *Id.* 477; 9 *Watts* 185.

The opinion of the Court was delivered by

BLACK, J.—This was ejectment for land which was claimed by both parties under one Terry, who was admitted to have been at one time the owner. The plaintiff claimed it under Terry's conveyance, dated in 1847, and the defendant proved that Terry, in 1840, had mortgaged it for $500, and that it had been sold by the sheriff to him in 1848, under a regular proceeding had upon the mortgage. On the face of the two titles that of the defendant is the best. But the plaintiff alleges that the defendant's purchase at the sheriff's sale was void, because he practised a fraud in buying off a bidder.

We have several times lately decided, in obedience to what we are well satisfied is the law of Pennsylvania, that a purchaser at sheriff's sale who practises any deceit or imposture, or who is guilty of any trick or device, the object of which is to get the property at an under value, thereby renders the title so acquired utterly void and worthless in his hands. But it must be shown also that he did actually get it for less than it was worth, or less than what it would have sold for at a fair sale. A mere naked intention fraudulently to get land for less than it is worth, or an unsuccessful effort, which results in no loss to one party and no gain to the other, is not enough to make the title of the purchaser void.

But it is complained that the Court, in this case, adopted the wrong standard to ascertain the price of the property. Evidence was admitted to show its *value.* We do not think there was any error in this. When a man is charged with a fraud like this, it is certainly very important for the jury to know whether he paid an outside price for the land after all. It diminishes very much the probability that any fraud was either committed or intended.

It is true, that a person whose property is to be sold at a judicial sale is legally entitled to all the advantages arising out of the wants and wishes, or even out of the capricious fancies of bidders. If, therefore, there be a bidder on the ground ready to give twice as much for the property as it is really worth, and another bidder buys him off, so that he gets it for no more than its true value, the title is void; because, thereby the defendant in the execution has lost 50 per cent. of what he otherwise would have got. But this is a state of things which no Court or jury ought to suppose without plain evidence to establish it. When the purchaser shows that he has paid the full value, the presumption is that nobody else would have paid any more. The burden of proving that the bidder bought off was so unreasonable, and so regardless of his own interests, that he would have been willing to take it at a

[Abbey *v.* Dewey.]

higher price, is thrown with its full weight on the party alleging it.

But the Court charged, that the fraud could not be found by the jury, except upon "clear and undoubted proof of it;" and, for this alone, we are obliged to reverse the judgment. It is very seldom that perfectly clear proof can be produced of a fraud. In civil cases one party is as much entitled as the other to any doubt which may arise on the evidence. If the plaintiff in this case produced such evidence, of the fact he alleged against the defendant's title, as the jury could reasonably and safely rest their consciences upon, it was enough.

Judgment reversed and *venire facias de novo* awarded.