# McKibbin *versus* Martin.

# McKibbin *versus* Kline.

1. Fraud in fact in the transfer of chattels, consists in the intention to prevent creditors from recovering their just debts, by an act which withdraws the debtor's property from their reach.

2. Acts which though not fraudulently intended, yet as their tendency is to defraud creditors, if they vest the property of the debtor in his grantee, are void for legal fraud.

3. Legal fraud is tantamount to actual fraud.

4. Actual fraud is for the jury.

5. Legal fraud, where the facts are undisputed or are ascertained, is for the court.

6. Clow *v.* Woods, 5 S. & R. 275, is the *magna charta* of the law of Pennsylvania on the subject of actual and legal frauds in the transfer of chattels.

7. The retention of possession by the vendor of chattels is a fraud in law whenever they are capable of delivery and no honest and fair reason can be given for the vendor not giving up possession to the vendee.

8. Where there is evidence from which a jury could infer under instructions of the court, that there had been an actual and exclusive change of possession, the question should be submitted to them.

9. Whenever the subject of the sale is capable of actual delivery, it must accompany and follow the sale.

10. The court is to judge whether there is sufficient evidence to infer such delivery.

11. Where the subject of the sale is not reasonably capable of an actual delivery, a constructive delivery will be sufficient.

12. In such case it is only necessary that the vendee should assume the control of the subject so as reasonably to indicate to all concerned, the change of ownership.

13. The question is, did the vendor do all that might be reasonably expected in the case of a real and honest sale.

14. In the case of a large hotel, it is enough for the vendee of the furniture, &c., &c., to assume the direction and control of them in such an open and notorious manner as usually accompanies an honest transaction.

15. The possession of the chattels by the vendee must be exclusive of the vendor.

16. A possession which in law is concurrent, is such as will lead persons to infer that there has been no actual change.

17. Where there has been a sufficient delivery, actual or constructive, and the vendee is in possession, the fact that the vendor is employed about the establishment in a capacity holding out no *indicia* of ownership, is not such a concurrent ownership as the law condemns, and the question is for the jury.

18. Barr *v.* Reitz, 3 P. F. Smith 256, approved; Steelwagon *v.* Jeffries, 8 Wright 407, distinguished.

March 2d 1870.    Before READ, AGNEW and SHARSWOOD, JJ. THOMPSON, C. J., at Nisi Prius.

Error to the District Court of *Philadelphia*: No. 10 and 11, to July Term 1869.

The cases, the subject of these writs of error, were two feigned issues under the Sheriffs' Interpleader Act, in both of which Chambers McKibbin was claimant and plaintiff; Thomas J. Mar-

[McKibbin v. Martin.]

tin was the defendant in one issue and Charles D. Kline in the other. The issues depended on the same facts and were tried together January 13th 1869, before Hare, P. J.

The defendants had respectively recovered judgments against Jeremiah and W. C. McKibbin, who composed the firm of J. & W. C. McKibbin, and had been proprietors and conductors of the Merchants' Hotel, a large hotel in the city of Philadelphia. Executions were issued on the judgments, in September 1868, under which the furniture, &c., in the hotel were levied upon as their property and claimed by the plaintiff. The issues were to try the ownership of these goods.

The plaintiff gave in evidence the following " Articles of agreement made the 11th day of June 1868, between Jeremiah McKibbin and William C. McKibbin, copartners as J. & W. C. McKibbin of the one part and Chambers McKibbin of the other, Whereas, on the first day of February, A. D. 1865, the said Chambers McKibbin, being the owner and proprietor at the time, of the lease and good-will of the Merchants' Hotel, situated on the west side of Fourth street, south of Arch street, in the city of Philadelphia, also of its furniture and fixtures of all kinds, &c., and generally of all its arrangements and appertenances of every nature for the transaction of the business of hotel-keeping, on the said 1st February 1865, sold the same to the said J. & W. McKibbin, for the sum of $30,000, of which $5000 were to be paid in twenty days, and $5000 in each of five other payments, respectively in 6, 12, 18, 24 and 30 months, with interest for deferred time, from February 1st 1865, for each of which payments the said J. & W. McKibbin gave to the said Chambers McKibbin their promissory note; and whereas the whole of said purchase-money remains due and unpaid, the parties of the first part having wholly failed to pay any of said notes or any interest thereon; and whereas in the event of default in their payment, it was agreed that upon request of said Chambers McKibbin, said premises should be reconveyed:

" Now, therefore, these presents testify that for and in consideration of the surrender and cancellation of the said promissory notes and of the debt they represent, &c., and in pursuance of the aforesaid agreement and understanding at the time of the original purchase, the said parties of the first part have sold, &c., unto the said party of the second part, the lease of the said the Merchants' Hotel premises, together with the good-will, fixtures and appertenances of the business now transacted in said hotel, and all and singular the furniture, &c., and generally all things for the transaction of the business of hotel keeping, to them the parties of the first part belonging, and now to said premises and the business there transacted pertaining."

Jeremiah McKibbin, a son of Chambers and one of the defendants in the executions, testified amongst other things: "Upon sale,

14 P. F. Smith—23

[McKibbin *v.* Martin.]

the property, in June 1868, passed into the hands of my father—the property described in bill of sale. The 'Press' advertisement of dissolution—also in 'Age'—are authorized advertisements of the change. From 11th of June 1868, C. McKibbin carried on the business of the hotel. Have had no interest in business since sale. Father has lived in the hotel since 1865. He has received the income, paid the bills and conducted the business since sale. I and my brother remained as before, and I was superintendent. I have received nothing but compensation for services, at the rate of $3500 a year, but there was no express bargain. Bills of hotel were made out in name of C. McKibbin as soon as could be printed. Bills are made out every day more or less. The sign 'Merchants' Hotel' in front of hotel. No sign put up of C. McKibbin. My father boarded with me and paid no board. My mother had general charge of house and no board was charged. He assumed general charge of business as soon as sale. No express contract has been made with me. He directed the payment of bills and business generally. He has since sale received proceeds of hotel and paid money out when necessary. Journal was of J. & W. C. McKibbin up to sale, and journal of C. McKibbin after sale in same book. I do not reside in hotel. The hotel deals with many people—probably 200—and with all, bills are made in name of father since sale. Boarders to firm, who were indebted, had to pay boarding in full to C. McKibbin."

George Jacoby testified: "I was bookkeeper for two years, to middle December last. We were ordered on 16th of June to open new set of books, and did so in name of C. McKibbin. From that time he conducted the business. 'Merchants' Hotel' is the only sign that was on the hotel for two years; was no sign of J. & W. C. McKibbin. Business was transacted, bills printed and receipted and rendered in name of C. McKibbin. Several were rendered in name of old firm and were sent back for correction. Cash-notes, checks, &c., were signed by C. McKibbin."

The advertisements referred to in the testimony of Jeremiah McKibbin are as follows:—

"The copartnership heretofore existing between the subscribers in the business of conducting the Merchants' Hotel of Philadelphia, is dissolved, they having disposed of their interest therein to Chambers McKibbin.          JEREMIAH McKIBBIN,
                                        W. C. McKIBBIN."

"The undersigned has again become owner of the 'Merchants' Hotel,' and will hereafter conduct and continue the business. He invites a continuance of its former patronage.
                                        CHAMBERS McKIBBIN."

The court submitted the question of good faith to the jury,

[McKibbin v. Martin.]

and reserved the following point:—"Whether under all the evidence there was such actual, visible, notorious delivery and change of possession from the sons to the father of the furniture as would be valid in law against the creditor of the vendor."

The jury found for the plaintiff. The court afterwards entered judgment for defendant in the feigned issue, on the point reserved.

The plaintiff took out a writ of error in each case, and assigned the entering of judgment for the defendant on the reserved point, for error.

*A. McClure* and *T. Cuyler*, for plaintiff in error, cited McVicker *v.* May, 3 Barr 224; Long *v.* Knapp, 4 P. F. Smith 518; Barr *v.* Reitz, 3 Id. 256; Hugus *v.* Robinson, 12 Harris 1; Benford *v.* Schell, 5 P. F. Smith, 393.

*T. J. Diehl* and *P. Archer, Jr.* (with whom was *L. C. Cassidy*), for defendants in error, cited Clow *v.* Woods, 5 S. & R. 275; Cadbury *v.* Nolen, 5 Barr 320; Dunlap *v.* Bournonville, 2 Casey 72; Young *v.* McClure, 2 W. & S. 147; Milne *v.* Henry, 4 Wright 352; Brawn *v.* Keller, 7 Id. 104; Edwards *v.* Harben, 2 T. R. 587; Babb *v.* Clemson, 10 S. & R. 419; Hoffner *v.* Clark, 5 Wharton 545; Steelwagon *v.* Jeffries, 8 Wright 407; Dewart *v.* Clement, 12 Id. 413; Barr *v.* Reitz, *supra ;* Meyers *v.* Wood, 1 Phila. R. 24; Randall *v.* Parker, 3 Sandford 97; Travers *v.* Ramsay, 3 Cr. C. C. R. 354; Reed *v.* Minor, Id. 32; Hamilton. *v.* Russel, 1 Cranch 310; The Romp, Olcott 196; Meeker *v.* Wilson, 1 Gall. 423; Cadogan *v.* Kennett, Cowp. 432; Billingsley *v.* White, 9 P. F. Smith 464. Responsibility cannot be avoided by an advertisement: Williamson *v.* Fox, 2 Wright 214; Watkinson *v.* Bank of Penna., 4 Wharton 482; Little *v.* Clark, 12 Casey 114; Lincoln *v.* Wright, 11 Harris 76.

The opinion of the court was delivered, March 10th 1870, by

SHARSWOOD, J.—There are probably no more difficult and embarrassing questions than those which relate to the respective provinces of the court and of the jury to determine what is law and what is fact. It would require a volume to consider the subject in all its bearings, and deduce accurate and intelligible principles from the great mass of the decided cases, and a philosophical treatise on this important head is still I think a *desideratum* of our legal literature. There are undoubtedly some rules clearly established—these are plain lines of demarcation, but there is a border land of controversy in which the opposing principles seem to be in continual conflict, the victory sometimes inclining to one side and sometimes to the other. This conflict often has ended in a reasonable compromise by which the ques-

tion has become what is termed a mixed question of law and fact, to be submitted to the decision of the jury under proper instructions from the court.

One of the questions upon which difficulty has often arisen is fraud in the sale or transfer of chattels under the statute of 13 Eliz. c. 5, Roberts's Dig. 295. Such fraud may be either actual or legal. Actual fraud or fraud in fact consists in the intention to prevent creditors from recovering their just debts by an act which withdraws the property of a debtor from their reach. Fraud in law consists in acts which, though not fraudulently intended, yet as their tendency is to defraud creditors if they vest the property of the debtor in his grantee, are void for legal fraud, which is deemed tantamount to actual fraud, full evidence of fraud, and fraudulent in themselves, the policy of the law making the acts illegal: Baldwin, J., in Hanson *v.* Eustace, 2 How. 688. Actual fraud is always a question for the jury—legal fraud, where the facts are undisputed or are ascertained, is for the court: Dornick *v.* Reichenback, 10 S. & R. 90. "As remarked by an eloquent writer," says Chief Justice Gibson, "these statutes of Elizabeth produce the most beneficial effects by placing parties under a disability to commit fraud in requiring for the characteristics of an honest act such circumstances as none but an honest intention can assume; and they seem to have been expressed in general terms purposely to leave room for a large interpretation by the judges, who, in accordance with the spirit rather than the words, have engrafted on them such artificial presumptions and legal intendments as are ordinarily subjects of judicial construction. In fact they act exclusively by presumptions, not always inflexible indeed, but sometimes amounting to legal conclusions:" Avery *v.* Street, 6 Watts 247.

In Twyne's Case, which came up in the Star Chamber in 44 Eliz., and is reported 3 Rep. 80 b, Moore 638, one of the badges of fraud was declared to be that "the donor continued in possession, and used the goods sold or given as his own; and by reason thereof he traded and trafficked with others, and defrauded and deceived them." No distinction was attempted between actual and legal fraud, and the tribunal forbade any question as to law and fact. It is unnecessary to trace the decisions in England. Clow *v.* Woods, 5 S. & R. 275, decided by this court in 1819, is the magna charta of our law upon this subject. The principles settled in that case have been recognised and affirmed by a bead-roll of subsequent decisions, which it would be a mere affectation of learning to cite. Without adverting to other points, it established that retention of possession was fraud in law wherever the subject of the transfer was capable of delivery and no honest and fair reason could be assigned for the vendor not giving up and the vendee taking possession. Since then the courts have been prin-

[McKibbin v. Martin.]

cipally occupied in determining when the evidence of change of possession was such as to present a question of law for the court or of fact for the jury.

No point as to actual fraud arises on this record. That was submitted to the jury, and decided by them in favor of the plaintiff. The whole question of legal fraud, however, was reserved and judgment entered on the reservation for the defendant. If there was evidence from which a jury would have been justified in inferring, under instructions from the court, that there had been in point of fact an actual and exclusive change of possession, it ought, as we think, to have been submitted to them.

The reserved point comprehends two questions, which, in the consideration of the case, it will be best to keep distinct. First: was there evidence from which the jury would be permitted to find such a delivery, actual or constructive, as the law requires to make the sale valid as against creditors? Second: was the possession taken by the vendee exclusive of the vendors or concurrent with them, in point of law?

1. Whenever the subject of the sale is capable of an actual delivery, such delivery must accompany and follow the sale to render it valid against creditors. The court is the tribunal to judge whether there is sufficient evidence to justify the inference of such a delivery. If there is any question upon the evidence as to the facts, or resting upon the credibility of witnesses, the determination of that must be referred of course to the jury. But if not, it is incumbent upon the court to decide it, either by a judgment of nonsuit or a binding direction in the charge: Young v. McClure, 2 W. & S. 147; McBride v. McClelland, 6 Id. 94; Milne v. Henry, 4 Wright 352; Dewart v. Clement, 12 Id. 413. But it often happens that the subject of the sale is not reasonably capable of an actual delivery, and then a constructive delivery will be sufficient. As in the case of a vessel at sea, of goods in a warehouse, of a kiln of bricks, of a pile of squared timber in the woods, of goods in the possession of a factor or bailee, of a raft of lumber, of articles in the process of manufacture, where it would be not indeed impossible, but injurious and unusual to remove the property from where it happens to be at the time of the transfer: Clow v. Woods, 5 S. & R. 275; Cadbury v. Nolen, 5 Barr 320; Linton v. Butz, 7 Id. 89; Haynes v. Hunsicker, 2 Casey 58; Chase v. Ralston, 6 Id. 539; Barr v. Reitz, 3 P. F. Smith 256; Benford v. Schell, 5 Id. 393. In such cases it is only necessary that the vendee should assume the control of the subject so as reasonably to indicate to all concerned the fact of the change of ownership. Where nothing of the kind has taken place, it is the duty of the court to pronounce a mere symbolical delivery to be insufficient; but where there is evidence of such assumption of control, it is for the jury to say whether it

[McKibbin *v.* Martin.]

was bonâ fide or merely colorable, and whether it was enough to give notice to the world. The question in such case is, did the vendee do all that he might reasonably be expected to do in the case of a real and honest sale? In Barr *v.* Reitz, 3 P. F. Smith 256, the rule was clearly expressed in the opinion of the court by Mr. Justice Agnew. "In considering the question what is an actual delivery, the nature of the property and circumstances attending the sale must be taken into the account. We are not, in carrying out a mere rule of policy, to confound all distinctions between that which is capable of easy delivery and that which is not. Squared timber lying in the woods, or piles of boards in a yard, are incapable of the same treatment as a piece of a cloth, or a horse. So there are many cases which allow the force of those circumstances, which take away any false color or appearance of ownership remaining in the seller." Then, after citing a number of decisions, it is added : "But without affirming these doctrines to the extent these cases might seem to warrant, it is sufficient to say they are illustrations of the principle we have stated, that the circumstances may prevent the court from pronouncing it a fraud, *per se*, and carry the case to the jury on the facts with proper instruction from the court on the law, if the jury find the delivery of possession merely formal or constructive." The distinction founded upon the principle here stated between a question of law and one of fact, may be illustrated by a familiar example. Upon the sale of a single board, or of a cartload of boards, it would not do to set up a constructive delivery by marking, and letting it remain where it was until it was convenient to remove it. The court would be bound to hold as matter of law, that such articles were capable of actual delivery. But it would be different with a board-yard, filled with many piles of lumber. There the circumstances are such as to render an actual delivery and removal impracticable, or at least injurious and expensive. The vendee must assume the control, and do all that an honest man would reasonably be expected to do to advertise the public of the sale.

This seems to be just the difference between the case of Steelwagon *v.* Jeffries, 8 Wright 407, upon which the court below relied, and the evidence as it appears on this record. That was the sale of the furniture of a dwelling-house. Nothing is easier than to remove it to another house, or if that be not necessary, for the vendor to leave the house and the vendee to take possession with all the ordinary *indicia* of ownership. That is the ground upon which the present Chief Justice placed that determination. "Why," says he, "is not the transfer of household property to be actual and exclusive like that of any other personal property? It is as capable of manual occupancy and removal as almost any other kind. If the sale be actual it usually is re-

moved: if it be only for the purpose of securing it against creditors, why shall it not stand on the same platform with other property, capable of delivery and change of possession?" But the circumstances of a large establishment like the "Merchants' Hotel" are entirely different. Here are many hundred lodging-rooms, parlours and sitting-rooms, besides the culinary department with its necessary offices, all fully furnished. To what other building can the vendee remove them, or at least without great deterioration and expense? They are valuable mainly for the purpose for which they are used and in the place where they are situated. It is enough that the vendee assume the direction and control of them, and in such an open, notorious manner as usually accompanies an honest transaction. Whether all was done that ought to have been done in this instance, and whether the change of possession was real and bonâ fide—not merely colorable and deceptive—leaving the actual possession and control in the vendors, were questions of fact which ought to have been submitted to the jury.

2. But the law undoubtedly is, that not only must possession be taken by the vendee, but that possession must be exclusive of the vendor. A concurrent possession will not do. "There cannot in such case," said Mr. Justice Duncan, "be a concurrent possession; it must be exclusive, or it would by the policy of the law be deemed colorable:" Clow v. Woods, 5 S. & R. 287. And again, in Babb v. Clemson, 10 Id. 428: "There cannot be a concurrent possession in the assignor and assignees'; it must be exclusive, or it is deemed colorable and fraudulent. To defeat the execution, there must have been a bonâ fide substantial change of possession. It is mere mockery to put in another person to keep possession jointly with the former owner. A concurrent possession with the assignor is colorable." But what is the concurrent possession which will be deemed such as matter of law? Evidently as owner, or accompanied with the ordinary *indicia* of ownership—such as will lead any person not in the secret to infer that there has been no actual change. The vendor must appear to occupy the same relation to the property as he did before. In such a case the court must pronounce it fraudulent and colorable *per se*. We have been referred to three cases only in our books which were determined on this ground. These were all of the character I have stated: Hoffner v. Clark, 5 Whart. 545; Brawn v. Keller, 7 Wright 104; Steelwagon v. Jeffries, 8 Id. 407. Certainly it may be considered as settled by abundant authority in this court that where there has been a sufficient actual or constructive delivery to the vendee, and he is in possession, the fact that the vendor is employed as a clerk or a servant about the establishment, in a capacity which holds out no *indicium* of ownership, does not constitute such a concurrent possession as the law

[McKibbin *v.* Martin.]

condemns. In such cases it is a question for the jury whether the change of possession has been actual and bonâ fide—not pretended, deceptive and collusive. If there are facts tending to show that he had a beneficial interest in the business; that the proceeds of it went to him beyond a reasonable compensation for his services; that he had an unlimited power to draw upon the till; or that with the knowledge of the vendee he took money to pay his own debts—these are facts for the jury. I will refer to a few of the cases which sustain this view. Thus in McVicker *v.* May, 3 Barr 224, a sale by a father to a son; when the son had removed to another tavern-stand the father continued to live with him, and was employed about the house as a servant. "When the son opened the new tavern," say the court, "his mother and sister kept house for him, and his father did jobs; but the son's possession and use of the goods were exclusive. But if mere cohabitation were a badge of fraud, a father's sale to his unmarried son would seldom be sustained. It certainly was not necessary for the son to turn his father out of doors." Forsyth *v.* Matthews, 2 Harris 100, as explained by Mr. Justice Lowrie, before whom the case had been tried below, 2 Casey 74, was a sale by a son to his father, and though the business continued to be conducted in the same place and with the assistance of the son, yet there being evidence of an actual transfer of the possession and control of the property, the sale was sustained. Childs *v.* Simmons, an unreported case, cited 2 Casey 74; the transfer was by a storekeeper to his clerk, the vendor continued to aid in the store, but the sign was changed, and the sale was upheld. Hugus *v.* Robinson, 12 Harris 9; the subject was a drugstore. The vendee bought it for his son, who had been a clerk and apprentice of the vendor, and put him in possession. The vendor attended the store very much as before, and the signs were not changed. It was left as a question of fact, to the jury, and the judgment was affirmed. In Dunlap *v.* Bournonville, 2 Casey 72, two brothers transferred a coachmaker's establishment to a third, and the vendors remained in the capacity of foremen. It was held that it ought to have been submitted to the jury. Chief Justice Thompson has said that this case stands on the very outer verge of settled principles, but on its facts is still within them: 8 Wright 412. In Billingsley *v.* White, 9 P. F. Smith 464, two partners sold out a store of goods to the brother of one of them. One of the vendors continued in the store as a hired hand. "If," said Mr. Justice Williams, "Billingsley's acts and declarations as a salesman had been such as to leave it doubtful whether he was acting as owner or agent, then his presence and connection with the goods would have been such evidence of retained possession as to render the sale fraudulent. But if his acts and declarations were professedly and apparently those of a mere agent, and were

[McKibbin *v.* Martin.]

so understood by the parties with whom he dealt, as all the evidence tends to show, then they constituted no such badge of fraud or evidence of retained possession as would justify the court in declaring the sale fraudulent."

I frankly confess that I have not regarded this line of decisions with favor. Dunlap *v.* Bournonville was tried before me in the District Court, and I entered the judgment of nonsuit, which was there reversed. I dissented from the determination in Billingsley *v.* White, because I was afraid that it went a step further than any of the preceding cases in recognising the right of the vendee to employ the vendor as his agent to conduct the business. Perhaps it does not go that far. But I have been too long on the bench—now nearly twenty-five years—not to have learned this lesson, that a judge has no right to adhere to his own favorite opinions, after they have been reversed or overruled. It is his duty to administer justice according to the law as it is settled— not according to his own notions of what it ought to be. *Neminem oportet esse sapientiorem legibus:* no man out of his own private reason ought to be wiser than the law, which is the perfection of reason, says Lord Coke: 1 Inst. 97, b.

Judgment reversed, and *venire facias de novo* awarded.