## Pearson *versus* Carter.

In a feigned issue, under the Sheriff's Interpleader Act, it appeared that the claimant was employed by the defendant in the execution, which was a fishing company ; that he was charged with the care of the grounds and performed various offices for the members; that he was compensated therefor by an annual salary and the use of the farm attached to the club-house, and that the property claimed by him, which consisted of farming utensils, &c., was purchased by him at full price, and had been used by him on the farm in the same manner after the sale to him as before : *Held*, reversing the court below, that the question whether there was such a change of possession, as the nature and circumstances of the case admitted of, should have been submitted to the jury together with the relation of the parties.

March. 24th 1880.    Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Error to the Court of Common Pleas of *Delaware county:* Of January Term 1879, No. 228.

Feigned issue under the Sheriffs' Interpleader Act, wherein Frank Pearson was plaintiff, and Paul B. Carter, defendant.

The facts were these: Carter having a judgment against the Tinicum Fishing Company, levied upon the following personal property which he found on the farm of the company, viz.:

|  | *Sorrel horse, | Brown horse, | Black horse. |  |
|---|---|---|---|---|
| Three horses, | $90. | $50. | $40. | $180.00 |
| *One cart, | | | | 40.00 |
| *One dearborn, pole and shafts, | | | | 80.00 |
| One light carriage, | | | | 85.00 |
| One lot of harness, | | | | 25.00 |
| One sleigh, | | | | 40.00 |
| *One wheelbarrow, | | | | 4.00 |
| *One grindstone, | | | | 3.00 |
| *Two ploughs, $7 and $3, | | | | 10.00 |
| One cow, | | | | 40.00 |
| Two pigs, | | | | 12.00 |

[Pearson v. Carter.]

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Lot of chickens, | . | . | . | . | . | . | . | 12.00 |
| Lot of ducks, . | . | . | . | . | . | . | . | 4.00 |
| Lot of ice in ice house, | . | . | . | . | . | . | 25.00 |
| Lot of shovels, forks, &c., . | . | . | . | . | . | . | 2.00 |

$562.00

When the levy was made Pearson claimed that the above property belonged to him.

At the trial he testified that he lived on the farm of the company to take care of the house and grounds; that the company paid him $400 per year, and gave him the use of the farm; that his duties were to keep the club house and the lawn clean; to go to the railroad station for the members when they visited the club house, and to wash the table-linen and dishes at the club house, and wait upon the members. He further testified that in 1877 he purchased all the articles in the above list marked with an asterisk from the treasurer of the company, paying cash therefor, and for which the witness produced receipts. The remaining articles he testified had been purchased from other persons at different times, and had never belonged to the company.

The plaintiff submitted, inter alia, the following points, to which are appended the answers of the court:

1. If the jury believe there was a bona fide sale of the sorrel horse, dearborn, pole and shafts, and the cart, and such a delivery of possession or other overt change of ownership, as the nature of the property and the circumstances of the case admitted of, their verdict must be for the plaintiff for these articles.

Ans. " There must have been some visible change of possession. The purchaser being a servant of the vendor could not acquire a lawful title as against a creditor without a change of possession."

2. The fishing company had the right to sell and deliver possession of their personal property at any time before actual levy by the sheriff, if not done to defraud creditors.

Ans. " They had such a right in the usual course of business, but they could not sell to a servant without an open change of possession as against a creditor."

In the general charge the court, Clayton, P. J., inter alia, said:

" The policy of the law does not permit a person in embarrassed circumstances to sell his goods to his servant and then continue to employ the servant just as before the sale, without such a change of possession as to give full notice to creditors. If the claimant, however, bought the goods to make himself safe in his title to them, he should have removed them from the company's grounds and completely from their control. [There is not sufficient evidence of a change of possession as to one horse, one cart, one dearborn, one wheelbarrow, grindstone and two ploughs. For these articles

[*Pearson v. Carter.*]

the verdict ought to be for the defendant.] As to the other articles the verdict ought, in the opinion of the court, under the weight of the evidence, to be for the plaintiff. But the question of actual fraud is left with the jury. If you are satisfied there was no such fraud you should find for the plaintiff for the articles purchased from other persons than the company or its agents.

Verdict for defendant for the articles marked with an asterisk, and for plaintiff for the rest. After judgment thereon plaintiff took this writ, alleging, inter alia, that the court erred in the answers to the above points and the portion of the charge included in brackets.

*George B. Lindsay* and *Wayne MacVeagh*, for plaintiff in error.—Property already in possession of a purchaser cannot be delivered to him after the sale, and it is decided that where the subject of a sale is not capable of actual delivery a constructive delivery is sufficient; the question is, did the vendor do all he might reasonably be expected to do in the case of a real and honest sale ? McKibbin *v.* Martin, 14 P. F. Smith 352 ; Sheldon *v.* Sharpless, 2 W. N. C. 311.

What the relation of Pearson to the company was should have been submitted to the jury, and the court ought not to have said he was a mere servant. As to the land he was a tenant, and the only one in possession. There was nothing in the relations of the parties which forbade him buying as he did. Under the circumstances this was the only change of possession of which the case admitted, which is all the rule of law requires. Here everything indicated ownership in Pearson. He held out to the world the sign that he was the farmer and owned everything on the premises. The owner of the fee was an invisible corporation, the only evidence of whose existence was the records of its creation and occasional trips of the members to their club house in Tinicum. It is not the case of a man, who is owner and possessor of chattels, parting with the title and retaining possession ; but it is a case where the possessor, with all the *indicia* of ownership about him, completes his title by purchasing a latent interest of his landlord, which the world had no right to suppose ever existed.

*P. B. Carter* and *Aaron Thompson*, for defendant in error.— For more than half a century it has been an established principle of law that the possession of chattels must accompany and follow the transfer of them. There may be no actual fraud in such transfer, and still it is fraudulent as against creditors. The leading case is that of Clow et al. *v.* Woods, 5 S. &· R. 275. The same doctrine has been uniformly carried through our state reports, till the decisions embrace every possible attempt of insolvent debtors to part with chattels, retaining the possession

without visible change of ownership. If in such cases the vendor of chattels retain possession, it is a fraud *per se* as to creditors. In this case there was no semblance of delivery to or an attempt to take the possession or exercise the rights of ownership on the part of the plaintiff. Nor is there in the cases of McKibbin *v.* Martin, and Sheldon *v.* Sharpless, cited by the learned counsel, the slightest variation from the settled principle laid down in Clow *v.* Woods.

Mr. Justice PAXSON delivered the opinion of the court, May 3d 1880.

This was a feigned issue under the Sheriff's Interpleader Act, and the only question is whether there was a sufficient change of possession of the articles of personal property sold by the Tinicum Fishing Company to the plaintiff. The court was asked to instruct the jury (see 1st assignment) that, "if the jury believe there was a bona fide sale of the sorrel horse, dearborn, pole and shafts, and the cart, and such a delivery of possession or other overt change of ownership as the nature of the property and the circumstances of the case admitted of, their verdict must be for the plaintiff for these articles." The learned judge answered this point as follows: "There must have been some visible change of possession. The purchaser being a servant of the vendor, could not acquire a lawful title as against a creditor without a change of possession." The learned judge further instructed the jury (see 4th assignment): "There is not sufficient evidence of a change of possession as to one horse, one cart, one dearborn, wheelbarrow, grindstone and two ploughs. For these articles the verdict ought to be for the defendant." The learned judge based his ruling principally upon the fact that the plaintiff was a servant of the fishing company, the vendor, and therefore he could not acquire title without an open and visible change of possession. This was withdrawing from the jury the question of the relations between the parties. While it is perhaps true that the plaintiff was in a certain sense a servant, he was not so in the broad meaning of the term. He was employed to take charge of the fish house, at a salary of $400 per year. In addition he had the use of the farm; this involved possession of some sort. So far as the land is concerned, it involved a possession of which he could not be deprived arbitrarily, but only in accordance with rules affecting landlord and tenant. Having a right to seed the land, he had a right to remain and gather the harvest; he was also in the ostensible possession of the property of the company. The latter was a corporation, and its members only visited the place occasionally. The plaintiff having purchased bona fide, for aught that appears, the personal property in question, what change of possession was necessary, or even possible? The articles were in the actual possession of the plaintiff at the time of the sale; the

[Pearson *v.* Carter.]

company had the constructive possession; the plaintiff if a servant had rights upon the premises. This is not the case precisely of a sale by a party who has the indicia of ownership, and who makes no delivery of possession. The indicia of ownership for all practical purposes was in the vendee.

The question whether there was such a change of possession as the nature and circumstances of the case admitted of should have been submitted to the jury, in connection with the relations of the parties; the plaintiff's first point should have been affirmed. There is abundant authority for this. It is sufficient to refer to McKibbin *v.* Martin, 14 P. F. Smith 352. Later cases affirm the same doctrine.

The judgment is reversed, and a *venire facias de novo* awarded.