$$\begin{array}{cc} 144 & 107 \\ 150 & 346 \\ \hline 144 & 107 \\ 213 & 405 \\ \hline 144 & 107 \\ \text{f } 36 \text{ SC } ^1182 \end{array}$$

# O. S. GARRETSON ET AL. v. W. HACKENBERG ET AL.

APPEAL BY PLAINTIFFS FROM THE COURT OF COMMON PLEAS OF POTTER COUNTY.

Argued May 7, 1891—Decided October 5, 1891.

(a) A debtor, in part payment of his debt, transferred to his creditor, in good faith, all the appliances of a lumbering camp, teams, sleds, harness, tools, chains, etc., used by him in getting out timber under contract, and also assigned to the creditor his contract with the landowner.

(b) The purchaser and assignee did not remove the property from the place where it was in use, but, retaining the former owner in charge as his foreman, continued operations under the contract with the land-

owner, until the property was levied upon at the suit of another creditor:

1. Though a more formal delivery to the purchaser could have been made, yet, in view of the character and situation of the property, the use that was being made of it at the time, etc., no formal ceremony was necessary to a valid sale and delivery, even as against other creditors.

2. There are many instances in which there can be only a constructive delivery. A change in the location of the property is not always necessary, or even practicable. Due regard must be had to the character of the property, its intended use, the nature of the transaction, the position of the parties, etc.

3. The case should therefore have been submitted to the jury, under proper instructions, to find from the evidence whether the sale was in good faith or colorable, and whether, under the circumstances, the change of possession was all that could reasonably be expected of the vendee.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and WILLIAMS, JJ.

No. 434 January Term 1891, Sup. Ct.; court below, No. 58 March Term 1890, C. P.

On December 26, 1886, an issue in sheriff's interpleader was ordered, wherein O. S. Garretson and J. G. Garretson, doing business as the Buffalo Hardware Co., were made plaintiffs, and Wm. Hackenberg and C. W. Thomas, doing business as Hackenberg & Thomas, were made defendants, to determine the title to certain goods and chattels levied upon under a fieri facias in favor of Hackenberg & Thomas as the property of A. W. Burt, but claimed by the plaintiffs. Issue joined.

At the trial, on September 16, 1890, the case presented was in brief as follows:

On August 23, 1889, A. W. Burt was indebted to the plaintiffs in the sum of $2,486, on a book account; and on that day W. C. Burrows, the plaintiffs' business manager, went to the lumbering camp of Burt, who was getting out timber under a contract with Goodyears, landowners, and bought from Burt his camping outfit, to wit, horses, harness, sleds, an ox, pigs, axes, levers, chains, tools, dishes, stoves, beds and bedding, lumber-wagons, etc., for the sum of $1,643, taking an itemized bill of sale therefor, with a receipt by Burt acknowledging payment by a credit on the book account against him. Burt also made an assignment to the plaintiffs of his contract with the landowners. The property was not removed from the

land where it was in use, but the men were at once notified by Burrows that the plaintiffs had bought out Burt's interest in the property and in the timber contract, and that thereafter they would be the plaintiffs' employees, and it was arranged that Burt should remain as foreman for the plaintiffs. On October 7, 1889, judgment was entered by Hackenberg & Thomas, defendants in the issue, against A. W. Burt, on a note for $625 dated October 4, 1888, with credits thereon; and the same day, a fieri facias issued whereon the levy in this case was made, the plaintiffs then being in the use of the property in the manner above stated.

The case being closed on the testimony, the court MORRISON, J., charged the jury:

We assume that this was a bona-fide transaction, but we think that the parties utterly failed under the law to deliver this property in the way that the law requires, so as to make it a valid title, in the hands of the Buffalo Hardware Co. against the creditors of A. W. Burt. For the purposes of this action, we assume that Mr. Burt did owe the Buffalo Hardware Co., but we say that its effect was a legal fraud upon the execution creditors.

We have been asked by counsel for the plaintiffs to charge the jury as follows:

1. That if the jury believe that the transfer of the property was bona fide and in good faith, there was a sufficient delivery of the property, under the circumstances, to convey the title.

Answer: Under the undisputed evidence in the case we answer this point in the negative. We say there was not a sufficient delivery, not such a delivery as ought to have been made and could have been made.[1]

2. That, though indebted to others at the time of the transfer, if the indebtedness between Mr. Burt and the Buffalo Hardware Co. was bona fide, he had the right to make the transfer, if he made it bona fide.

Answer: We answer that in the affirmative, as a legal proposition; but what we say is, that he did not make the delivery and transfer as the law requires him to make it, and therefore the title did not pass.[2]

Defendant's counsel have asked us to answer certain points,

but it is unnecessary that we should answer any but the last one, that is:

3. That, under the evidence in this case, the verdict of the jury must be for the defendants.

Answer: We answer that point in the affirmative, and direct the prothonotary to take your verdict for the defendants.[3]

—The jury returned a verdict for the defendants, as directed.

A rule for a new trial having been argued, the court, MORRISON, J., on February 2, 1891, filed an opinion in part as follows:

The evidence was quite sufficient to show that this transaction or sale was not fraudulent in fact. There is no doubt that Burt was largely indebted to the plaintiffs; and it may be conceded that the amount credited to him was a reasonably fair price for the property at the time. But in our view, this sale, as against the other creditors of Burt, was fraudulent in law, for the reason that there was no such delivery or change of possession of the property as the law requires.

Taking into consideration the character of the property, the purpose for which it was used, and that the plaintiffs desired to continue the use of it, in the same business and in the same place, we do not say that they were required to remove the property to another location. But we do say that they should have required Burt to make a delivery of the property to them, or to some one for them, as fully as the character of the property and the purpose for which it was to be used would permit. This could have been done by putting a new man in possession, and having Burt go and remain away from the property; or, perhaps it might have been done by putting a superintendent or manager into the possession and management of the property, and retaining Burt as a subordinate or assistant. The right of a creditor, as between himself and his debtor, to take the latter's property in payment of the creditor's claim, and leave the property with the debtor, is not questioned; nor is the right of a failing debtor to prefer a creditor questioned. But we hold that when an insolvent debtor undertakes to sell and deliver all his property to one creditor, to the exclusion of the others, the rule that the sale of personal property without change of possession is void, ought to be enforced. If the pretended sale in the case in hand was not fraudulent in law, as against

the creditors of Burt, then we are unable to see what there is left of the rule that a sale, though honest in fact, may be fraudulent in law.

A careful consideration of the cases cited by the learned counsel for the plaintiffs, has not changed our view as expressed to the jury at the trial. In reaching this conclusion we have not overlooked McKibbin v. Martin, 64 Pa. 352, and kindred cases, but we think the case at bar is, on its facts, clearly distinguishable from the strongest cases in the books, cited by the counsel for the plaintiffs, to support his contention that the case ought to have been submitted to the jury.

The motion for a new trial is refused, and the rule to show cause is discharged.

—Judgment having been entered in favor of the defendants, the plaintiffs took this appeal, assigning for error:

1, 2. The answers to the plaintiffs' points.[1] [2]

3. The answer to the defendants' point.[3]

*Mr. John Ormerod* (with him *Mr. A. B. Mann*), for the appellants.

Counsel cited: Hugus v. Robinson, 24 Pa. 9; Avery v. Street, 6 W. 247; Renninger v. Spatz, 128 Pa. 524; McKibbin v. Martin, 64 Pa. 360; Dunlap v. Bournonville, 26 Pa. 74; Evans v. Scott, 89 Pa. 136; Pearson v. Carter, 94 Pa. 156; Crawford v. Davis, 99 Pa. 576; Ziegler v. Handrick, 106 Pa. 87; Cessna v. Nimick, 113 Pa. 82.

*Mr. H. C. Dornan* (with him *Mr. C. L. Peck*, *Mr. M. F. Elliott* and *Mr. W. I. Lewis*), for the appellees.

Counsel cited: Steelwagon v. Jeffries, 44 Pa. 412; Stephens v. Gifford, 137 Pa. 219.

OPINION, MR. JUSTICE STERRETT:

This was a feigned issue under the sheriff's interpleader act, to determine plaintiff company's title to certain personal property, claimed by them as vendees of A. W. Burt, as whose property the same was levied on by the sheriff under defendants' execution.

The property in controversy, consisting of the ordinary appliances of a lumbering camp, such as teams, sleds, harness, tools, chains, etc., was used by Burt in cutting and hauling

logs, peeling bark, etc., on lands of Messrs. Goodyear, under contracts with them. Burt was indebted to plaintiffs on book-account in nearly two thousand five hundred dollars, for goods and supplies sold and delivered to him; and in August, 1889, while the work was in progress, plaintiffs' manager went to the camp, bought the property from Burt for $1,643, and took from him an assignment of his contracts with the Goodyears. The evidence tended to show that Burt's employees were notified that their wages then due them would be paid by the vendees, in whose service they were expected to continue, and that Goodyears were informed of the transfer, and thereafter recognized the plaintiffs as assignees of the lumbering contracts, by settling with them. It was also arranged that Burt should thereafter act as plaintiffs' foreman, subject to their instructions. The price of the property was credited on Burt's account, leaving a balance of nearly eight hundred dollars due plaintiffs.

It was virtually conceded that the transaction, as between plaintiffs and Burt, was bona fide and untainted by anything like actual fraud. In his opinion refusing a new trial the learned judge says : " The evidence was quite sufficient to show that the transaction or sale was not fraudulent in fact. There is no doubt that Burt was largely indebted to plaintiffs, and it may be conceded that the amount credited to him was a reasonably fair price for the property at the time ; " but he appears to have thought that the delivery of the property in controversy to plaintiffs was not accompanied by sufficient ceremony to pass a valid title as against other creditors of Burt. He therefore refused plaintiffs' points, recited in the first and second specifications of error respectively, and, as requested by defendants in their third point, directed the jury to find for defendants. The reason that appears to have induced the learned judge to give this binding instruction and the withdrawal of the case from the jury, is disclosed by his remark in refusing plaintiffs' first point, viz., because there was " not such a delivery as ought to have been made and could have been made." It is quite true, as suggested by this language, that a more formal delivery of the property " could have been made." The several kinds of prop erty in actual use at different points, might have been collected together, and, after a formal delivery of the possession thereof

Opinion of the Court.

to the plaintiffs by Burt, the latter might have withdrawn from the premises entirely, and a new manager might have been placed in charge; but, in view of the character and situation of the property, the use that was being made of it, etc., no such ceremony was necessary to a valid sale and delivery thereof, even as against other creditors of the vendor. Unusual and unnecessary formality in such transactions is generally a badge of fraud, rather than of honesty. Where a purchase is made in good faith and for a valuable consideration, followed by acts intended to transfer the possession as well as the title, and the vendee assumes such control of the property as to reasonably indicate a change of ownership, the delivery of possession as matter of law cannot be declared insufficient. No such change of possession as will defeat the fair and honest purpose of the parties is required.

The evidence as to the delivery of the property to the plaintiffs, and their subsequent possession and control of it, was properly for the jury. The case should have been submitted to them, under proper instructions, to find from the evidence whether the sale was in good faith or colorable, and whether, under the circumstances, the change of possession was all that could reasonably be expected of the vendees, taking into consideration the character and situation of the property. There are many instances in which from the necessity of the case there can only be a constructive delivery: Evans v. Scott, 89 Pa. 136 It is well settled that a change in the location of the property is not always necessary, or even practicable. Due regard must be had to the character of the property, its intended use, the nature of the transaction, position of the parties, etc. The following are some of the many cases in which these principles are recognized: Hugus v. Robinson, 24 Pa. 9; Dunlap v. Bournonville, 26 Pa. 74; McKibbin v. Martin, 64 Pa. 360; Pearson v. Carter, 94 Pa. 156; Crawford v. Davis, 99 Pa. 576; Ziegler v. Handrick, 106 Pa. 87; and Renninger v. Spatz, 128 Pa. 524.

It is unnecessary to refer at length to the evidence tending to show that the sale was made in good faith and for a full consideration; that immediately thereafter Burrows, the plaintiffs' manager, put an increased force of men upon the work, furnished all the materials and supplies necessary to carry it on,

and that it was a matter of public notoriety on and about the premises that plaintiffs had purchased the property, and were carrying out the contracts.    After the transfer, Burt had neither constructive nor actual possession of the property.    He neither hired nor paid any of the men, nor exercised any act of ownership over the property.    He had no title to the land on which the property was.    The camp was merely a temporary shelter for the men and the teams.    Burt, under his arrangé-ment with Burrows, remained on the premises as foreman.    The latter testified: "I told Mr. Burt to go on with the work, and finish it as rapidly as he could, and that I would get more men and send them on to the work, and would allow him what compensation he was entitled to.    I did send him more men, and I paid the men from time to time, and furnished all the materials for the job."    James Harvey, plaintiffs' agent, testified: "I hired men and sent them on the job to work, and paid them when Burrows was not along.    I had a pay-roll that was made up at the Buffalo Hardware Company's office."    Other witnesses testified that it was a matter of notoriety, on the last of August or first of September, that the job had been transferred to the Buffalo Hardware Company.    In view of this and other testimony, to which reference might be made, it was error to withdraw the case from the jury and direct a verdict for defendants.

> Judgment reversed, and a venire facias de novo ordered.

