## Gump v. McDaniel, Appellant.

*Contract—Sale—Delivery of possession—Leased chattels.*

A sale of a chattel in the hands of a lessee is good against an execution creditor, if the lessor does not retake possession.

Where an owner of a traction engine leases it to another and while it is under lease and in a broken down and dismantled condition sells it to a third person at what appeared to be a fair price, and the purchaser takes steps to secure possession of the engine, but before he succeeds the engine is levied upon by an execution creditor of the vendor, the question as to whether there was fraud in fact is one for the jury, and if the jury finds in favor of the purchaser, the court commits no error on a motion for judgment non obstante veredicto in finding that there was no legal fraud and in refusing to set aside the verdict.

Argued Oct. 25, 1909.    Appeal, No. 225, Oct. T., 1908, by defendant, from judgment of C. P. Bedford Co., Sept. T., 1908, No. 137, on verdict for plaintiff non obstante veredicto in case of H. Frank Gump et al., trading as H. Frank Gump & Sons, v. W. W. McDaniel. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Sheriff's interpleader to determine the ownership of a traction engine.  Before SHULL, P. J., specially presiding.

The facts are stated in the opinion of the Superior Court.

Plaintiff presented the following points:

4. That the verdict of the jury must be for Gump & Sons, the plaintiff, unless there was actual fraud or fraud in fact in the contract of sale, but fraud in fact must be clearly established by the defendant from evidence in the case. It cannot be presumed. *Answer:* This point is affirmed. [11]

5. That to establish fraud in fact the defendant must show by clear and satisfactory evidence that there was collusion between Gump & Sons and Clark with intent to defraud the creditors of Clark, and if he fails in this proof the verdict must be for the plaintiff. *Answer:* This point is affirmed. [12]

7. That Clark had a perfect right to sell this engine to Gump & Sons, or to any other person, and such sale would be good in law, unless it were shown on the trial that it was not a bona fide sale or that it was a fraudulent arrangement made with intent to defraud the cerditors of Clark. *Answer:* This point is affirmed. [13]

Defendant presented this point:

5. That there is no evidence in this case, sufficient to submit to the jury, that the plaintiffs took possession of the engine in dispute at the time of the sale; nor is there any evidence to show that the parties did all in their power to make the facts of sale public and to give notice to all parties in interest. *Answer:* This point is refused.

Verdict and judgment for plaintiff.  Defendants appealed.

*Errors assigned*, amongst others, were (1) in reserving fifth

point submitted by defendant and overruling motion for judgment non obstante veredicto; (11–13) above instructions, quoting them.

*Frank E. Colvin,* for appellant.—If the purchaser wishes to make himself secure against the creditors of his vendor, he must take the property into his exclusive possession, so that the change of possession may be visible, and by this means, become known to all whom it may concern: Streeper v. Eckart, 2 Whart. 302; McKibbin v. Martin, 64 Pa. 352; Billingsley v. White, 59 Pa. 464; Clow v. Woods, 5 S. & R. 275; Barlow v. Fox, 203 Pa. 114; White v. Gunn, 205 Pa. 229; Worman v. Kramer, 73 Pa. 378; Stephens v. Gifford, 137 Pa. 219.

*John H. Jordan,* for appellee.—The facts were for the jury: McKibbin v. Martin, 64 Pa. 352; Garretson v. Hackenberg, 144 Pa. 107; Caulfield v. Van Brunt, 173 Pa. 428; Reyer v. Rice, 36 Pa. Superior Ct. 178.

Change of possession by actual delivery was not necessary: Linton v. Butz, 7 Pa. 89; Worman v. Kramer, 73 Pa. 378; Woods v. Hull, 81* Pa. 451; Caulfield v. VanBrunt, 173 Pa. 428.

OPINION BY MORRISION, J., April 18, 1910:

In the winter of 1903 and 1904, W. E. Clark purchased a secondhand traction engine and took possession of it. In March, 1907, he sold and delivered it to Hockenberry and Decker for $800 and they kept it for about six months, when they resold it to Clark for $600. It was then on the premises of George Weicht, about five miles from Clark's home, and he was to get the engine at Weicht's. But in fact he did not remove the engine from that place. In November or December, 1907, the engine being out of repair, Clark leased it to Wallace & Garlick; they were to put it in repair and to have the use of it at $1.00 per day for each day that they actually used it till they were fully repaid for the expense of the repairs which they should put upon the engine. These lessees took the en-

gine into their possession and used it till January, 1908, when in moving it from one farm to another, to continue their work, the master wheel broke, entirely disabling the engine. The lessees pulled it to the side of the road, on the farm of G. C. Probst, about two miles from Clark's home. They notified Clark to have the engine repaired which he agreed to do, but in fact this was never done by him. At this time there was money yet coming to Wallace & Garlick for repairing the engine, and this was never paid to them. There is evidence from which the jury could find that they did not surrender their lease of the engine. Clark never had the actual possession of the engine from the time he sold it to Hockenberry and Decker in March, 1907. On March 10, 1908, Clark being financially embarrassed, sold the engine to Gump & Sons, appellees, for the sum of $600 to be paid, $450 to a bank holding Clark's notes for that amount, indorsed by appellees, and to pay a book account of theirs against Clark, and the balance of the $600 was to be paid to Clark in money. Appellees promptly notified the bank of their purchase of the engine and paid the notes as agreed. They also promptly authorized W. B. Karns to look at the engine and repair it and bring it to Everett, but Karns did not go to the engine until March 25, 1908, and it was then under levy by the sheriff. On March 17, 1908, appellant secured judgment against Clark and issued an execution thereon to the sheriff and on the same day the sheriff levied on all of Clark's personal property, including the engine. The property so levied was all sold by the sheriff, except the engine, and this issue was framed under the interpleader act to try the title to the engine. The trial resulted in a verdict for the appellees and the court having refused a new trial and judgment non obstante veredicto, and entered judgment on the verdict for the appellees, the appellant took this appeal.

We find in the record fourteen assignments of error, but it will not be necessary to discuss them seriatim. When it is recalled that the engine had been out of the possession of Clark since March, 1907, and that there was ample evidence at the trial from which the jury could find that the sale by Clark to appellees on March 10, 1908, was bona fide and for a fair and

valuable consideration, we are not able to agree with the learned counsel for the appellant that the court erred in not holding that the sale of the engine was fraudulent in law, because the appellees did not immediately remove it from the Probst farm and retain the actual possession of it thereafter. If this engine had been in the possession of Clark when the sale of March 10, 1908, was made, there would be much force in the contention that failing to take possession of it by the appellees would amount to a fraud in law as to the execution creditors of Clark, but we think the authorities in Pennsylvania make a marked distinction in a case where the personal property sold was at the time in the possession of lessees.

In Linton v. Butz, 7 Pa. 89, it is decided as stated in the syllabus: "A sale of personal property in the hands of a bailee is good against an execution creditor, though there be no actual delivery, if the vendor does not retake possession. And so if the vendee takes possession and leaves the property with a former bailee for a special purpose." That case is cited and followed in Stephens v. Gifford, 137 Pa. 219. It is again cited and followed in Caulfield v. Van Brunt, 173 Pa. 428.

In Worman v. Kramer, 73 Pa. 378, it is held as stated in the syllabus: "A sale of goods in the hands of a bailee is good against an execution creditor, if the vendor do not retake possession." To the same effect is Woods v. Hull, 81* Pa. 451. We think these authorities, as well as others that might be cited, effectually dispose of the appellant's contention that the court ought to have pronounced the sale of the engine fraudulent in law.

Now let us see what the learned court did submit to the jury. We think he very fairly and adequately submitted to the jury the following questions: Was there fraud in fact? Was the sale bona fide? Was the price a fair one? Was such possession of the property taken and such acts of ownership exercised by Gump & Sons as could reasonably be expected, considering the location and character of the property, its position, condition and circumstances attending the sale? Had the vendor leased the engine to Wallace & Garlick? Did the lessees surrender the engine to the lessor, or was the possession of the

engine in the lessees at the time of the sale?  The court
fully and carefully instructed the jury in regard to these ques-
tions of fact and the jury was instructed that if the sale was
not bona fide for a fair price, and if Gump & Sons did not take
such possession and exercise such acts of ownership as could be
reasonably expected, considering the character and condition
of the property, and the lease claimed by Wallace & Garlick,
then their verdict should be for the defendant.  The verdict
indicates that they found every question of fact in favor of the
appellees.  We think the following authorities fully sustain the
court below in submitting the case to the jury to ascertain
whether or not there was fraud in fact: McKibbin v. Martin, 64
Pa. 352; Garretson v. Hackenberg, 144 Pa. 107; Caulfield v.
Van Brunt, 173 Pa. 428; Reyer v. Rice, 36 Pa. Superior Ct.
178.

At first blush we had some question about the correctness
of the learned court's unqualified affirmance of the fourth and
fifth points (eleventh and twelfth assignments of error).  The
affirmance of these points placed the burden on the defendant
of proving actual fraud.  If in presenting the plaintiffs' case,
evidence had been produced from which the jury could have
found actual fraud, then we would feel bound to sustain the
eleventh and twelfth assignments.  But we have reached the
conclusion that the plaintiffs' evidence tends strongly to sus-
tain their title and if the jury could find fraud in fact, it must
come from the defendant's showing and theory of the evidence.
With this view of the case we are not prepared to hold that the
court erred in affirming the fourth and fifth points.

Considering the sale of the engine in the present case to the
appellees in the light of all the circumstances disclosed by the
evidence, it surely bore the appearance of bona fide sale and
in such a case, " Fraud is not to be presumed without satisfac-
tory proof of its existence; which can scarcely be affirmed
where a proper motive exists, which might as readily have been
the operating motive as one that was fraudulent."  AGNEW, J.,
in Bear's Est., 60 Pa. 430.  See also Lasher v. Medical Press
Co., Ltd., 203 Pa. 313, and cases therein cited.

While fraud is not to be presumed, yet it can be inferred

from facts clearly proved leading to that conclusion: Jackson v. Summerville, 13 Pa. 359; Abbey v. Dewey, 25 Pa. 413; Bentz v. Rockey, 69 Pa. 71. In Werner v. Zierfuss, 162 Pa. 360, Mr. Justice MITCHELL, speaking for the Supreme Court, said: "That where there is an actual debt, the jury cannot be permitted to infer a fraudulent intent from the mere fact of payment or preference given to it . . . . 'the judge said in his charge that little room is left to attribute fraudulent motives when a debt is actually due from the vendor nearly equal to the value of the property. He should have said there is no room at all. We are not permitted to assign a bad motive to an act which is not wrong in itself or in its necessary consequences . . . . a jury is not at liberty to deduce fraud from that which the law pronounces honest.' See also Bear's Est., 60 Pa. 430–436."

The doctrine of the latter case has been followed in a large number of cases both in the Supreme and Superior Courts. In Com. v. Erie & Pittsburg, R. R. Co., 74 Pa. 94, AGNEW, J., said in delivering the opinion of the Supreme Court: "A corporation, as well as an individual, is entitled to the ordinary presumption of rightful action until the contrary is shown."

It is a well-settled rule of law that there is a presumption against fraud, coven, vice and immorality. In Winlack v. Geist and Thomas, 107 Pa. 297, Mr. Justice GREEN, for the Supreme Court, said: "On the contrary, we think with the learned court below, that when a man does an act, the presumption, in the absence of evidence otherwise, is that he acted rightfully and not wrongfully. This does the defendant no harm. He is at perfect liberty to disprove the presumption and show by any sufficient testimony that it does not apply in the given case." See also Mead v. Conroe, 113 Pa. 220; Whitman v. O'Brien, 29 Pa. Superior Ct. 208, and authorities therein cited. In the light of these authorities and many others we are of the opinion that the court did not err in affirming the fourth and fifth points.

We also think that the court was warranted, under the evidence, in affirming the plaintiff's seventh point, thirteenth assignment. We see no merit in the fourteenth assignment

that the charge of the court, with the answers to the points, as a whole is contradictory, conflicting, uncertain, misleading and is unfair to the defendant. On the contrary, we think the charge, taken as a whole, is adequate and fair.

The appellant complains of the action of the court in reserving decision on the points asking for a binding instruction that fraud in law had been established. Also in refusing judgment for the defendant non obstante veredicto on the same ground. We are unable to see how reserving the decision, as to legal fraud, injured the appellant. We have found that legal fraud had not been shown and if the court had so decided at the trial, by refusing appellant's points on that question, it doubtless would have lessened the chances of obtaining a verdict that there was fraud in fact. The jury had nothing to do with the question of fraud in law, and it was entirely proper for the court to reserve that question till after the verdict came in as to fraud in fact. If the jury had found fraud in fact, as they might have done under the charge, the court would have been relieved from deciding the question of fraud in law, because if the sale was in fact fraudulent, the appellees' title was bad and the verdict and judgment must have gone in favor of the appellant. The whole question of fraud in law necessarily came before the court on the motion for judgment non obstante veredicto, and the refusal of such judgment and directing judgment on the verdict (the jury having found no fraud in fact) was a legal and orderly disposition of the reserved questions.

Upon the facts in this case we think it would have been error for the court to have directed a verdict in favor of the appellant on the ground of legal fraud. In our opinion, the case was well tried, and the assignments of error are all overruled, and the judgment is affirmed.