section 6.  It has no reference to equitable questions or matters properly cognizable in equity: Fleming's Est., 265 Pa. 399, 407, 408, and dissenting opinion of Judge SIMPSON to same effect, pp. 417, 418; and see luminous exposition of Judge HENDERSON in W. Va. Pulp & Paper Co. v. P. S. C., 61 Pa. Superior Ct. 555, 568.  As hereinbefore pointed out, the action of equitable ejectment is a substitute for a bill in equity and is to be decided on equitable principles.  See also Gause v. Wiley, 4 S. & R. 509, 528.  Furthermore, if the right of a vendee under articles to bring equitable ejectment could be impliedly revoked by the Act of February 24, 1834 (see 17 Pa. 193; 242 Pa. 188), we see no reason why the right of the vendor to do the same thing cannot be expressly repealed or rescinded by the Fiduciaries Act of 1917.

We are of opinion that the question was rightly decided by the learned judge of the court below, and the judgment is accordingly affirmed.

---

# Garland, Appellant, *v.* Riebe.

*School Code—Act of May 18, 1911, P. L. 309, section 1207— Teachers—Appointment—Relatives of directors—Void contracts.*

Section 1207 of the School Code provides that no school board in this Commonwealth shall employ as a teacher the daughter of any member unless it be by the affirmative votes of three-fourths of all the members.

If the statutory requirements are not observed in the employment of a teacher, the employment is not authorized by law, and the contract is void.

*School Code—Act of May 18, 1911, P. L. 309, section 1205— Amendment of May 23, 1919, P. L. 261, section 1205 A—Districts of the third class—Teacher's salary—New contract—Cancellation of existing contract.*

Section 1205 of the School Code requires that contracts with teachers in districts of the third class must be in writing.  The amendment of May 23, 1919, P. L. 261, section 1205 A, provides that a new contract, specifying an increase in a teacher's salary can

only be entered into after cancellation, by mutual consent, of existing contracts.

A school board cannot increase a teacher's salary, or authorize its superintendent so to do, without observing the statutory requirements.

Mandamus to compel the president of a school board to sign an order for a teacher's salary was properly refused, where the teacher had been regularly employed as a grade teacher, and the order was for payment of salary at an advanced rate as kindergarten teacher, a position to which she had been appointed by the superintendent of the district, after failure to be elected by the board in the legal manner.

Argued October 24, 1921. Appeal, No. 116, Oct. T., 1921, by petitioner, from judgment of C. P. Carbon Co., Oct. T., 1920, No. 62, overruling demurrer and setting aside alternative writ of mandamus, in the case of Charlotte Garland v. Louis Riebe, President of the Board of School Directors of the School District of the Borough of Lansford. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Affirmed.

Petition for mandamus to compel payment of salary as kindergarten teacher. Before BARBER, P. J.

The facts are stated in the following opinion of the court below:

This is a petition by a public school teacher asking that an alternative writ of mandamus issue, directed to the president of the school board, commanding him to sign an order on the treasurer, issued by the board in payment of a one-half month's salary claimed to be due. To the answer filed petitioner demurred.

FINDINGS.

1. The school district of the Borough of Lansford, Carbon County, Pennsylvania, is a district of the third class, under the control of a board of seven directors.

2. At a regular meeting of the board held August 2, 1920, all members being present, a motion to elect the relator, Charlotte Garland, a kindergarten teacher, at a

salary of $129.22 per month was lost, as was also a motion to elect her a grade teacher, a term not defined by the pleadings, at a salary of $112.04, whereupon by the requisite number of votes, six, duly recorded, relator, was elected a grade teacher at a salary of $99.34 per month, and the proper officers authorized to sign a contract.

3. A copy of the contract dated August 2, 1920, attached to the petition provides that Charlotte Garland "shall, under the supervision and exclusive direction of the board......teach in the Middle West schoolhouse for the term of 9½ months at a compensation of 99.34 dollars per month, to be paid semi-monthly."

4. At an adjourned regular meeting held August 9, 1920, all members present, a motion was passed authorizing Professor Kuntz, school district superintendent, "to solicit applicants for kindergarten teacher for coming school term."

5. At another adjourned regular meeting held August 23, 1920, by vote of four to two, one member, Mr. Coxe, being absent, duly recorded, a motion was passed that "the matter of kindergarten teacher be left in hands of superintendent to transfer a qualified teacher from the present corps at a salary of $129.22."

6. Acting upon this last motion, the superintendent transferred to the kindergarten department, the relator, Charlotte Garland, who entered upon and performed the duties required, from September 7th to the date of filing her petition on October sixth.

We are not informed as to whether the superintendent reported to the board the transfer made by him, or whether the board took any further action.

7. At a special meeting held September 27th, by a vote of four to two, one member, Mr. Coxe, being absent, a motion was passed, "that the proper officers be authorized to sign a pay-check for ten days' services from September 7th to the 20th of September, 1920, rendered by Miss Garland, kindergarten teacher."

8. In accordance with this motion an order or pay-check, No. 1,666, dated September 20, 1920, signed by the secretary and Joseph Garland, the treasurer, was drawn in favor of Charlotte Garland, in the sum of $64.61, being one-half of monthly salary of the kinder-garten teacher from September 7th as fixed by the resolu-tion of August 23, and presented to Louis Riebe, presi-dent of the board who refused to sign the order.

## DISCUSSION.

Section 312 of the School Code provides that "he, (the president), shall, after the board has acted on and ap-proved any bill or account for the payment of money authorized by this act, sign an order on the treasurer for the payment of the same."

The question then is, have the requirements of the stat-ute been met? If they have, the president has a minis-terial act to perform and is without choice in the matter. It is his duty to sign all orders drawn in payment of obligations lawfuly incurred and teachers' salaries are legal obligations.

In his answer to the alternative writ issued, the presi-dent of the board admits his refusal to sign the order in question and for cause says:

(a) "That Joseph Garland, one of the four members of the board, who voted in favor of the resolutions of August 23d and 27th authorizing the superintendent to transfer a teacher to the kindergarten department at a salary of $129.22 and the proper officers to sign a pay-check for ten days' services rendered by Miss Garland, is the father of Charlotte Garland, the teacher transferred, and in whose favor the order for $64.61 was drawn.

(b) That Charlotte Garland, being a daughter of a member of the board, was not legally employed as a kindergarten teacher at an increased salary, for the rea-son that the transfer was not authorized by three-fourths of all the members of the board as required by section 1207 of the code, which provides that "no teacher shall

be employed in this Commonwealth, by any board of
school districts, who is related to any member of the
board as.......daughter.......unless such teacher re-
ceives the affirmative votes of three-fourths of all the
members of the board."

The minutes show that only two-thirds of the members
present, six, voted in favor of the transfer, and that
the same four directors voted to issue the order for
$64.61. When the matter of the election of a kindergarten
teacher was considered by the board, Miss Garland failed
to receive the affirmative votes of three-fourths of all the
members of the board at two different salaries named in
the motions. The contract which the officers were author-
ized to execute, requires her "under the supervision and
exclusive direction of said board"...... to "teach in the
Middle Ward schoolhouse for the term of 9½ months,
at a compensation of 99.34 dollars per month, to be paid
semi-monthly."

While the board, or their superintendent and agent,
might transfer a teacher from one grade to another, yet,
if a kindergarten teacher requires a special appointment,
as would appear from the motion made to appoint Miss
Garland and lost, then such an appointment could only
be made by a duly recorded vote of the board and could
not be delegated.

"The principle is a plain one that the proper powers
or duties devolving by law or charter upon the council
over governing body, to be exercised by it when and in
such manner as it shall deem best, cannot be delegated to
others": Dillon on Mun. Corp., vol. 1, section 244.

A school district is not a municipal corporation, "but
an agent of the Commonwealth, and as such a quasi-
corporation for the sole purpose of administering the
Commonwealth's system of public education": Ford v.
School District, 121 Pa. 543.

In the exercise of their functions the duties of directors,
as such agents, are prescribed by the code, which all per-
sons dealing with them, not only may, but are bound to

know, as a reference to the many cases in which teachers, after rendering valuable service, have been unable to receive their salary, because the minutes of the board failed to show the names of the members who voted in favor of their appointment.

The courts have uniformly upheld the statute requiring the votes to be recorded upon the ground of public policy, even when individual hardship resulted.

If the statutory requirements were not observed in making the transfer, then the order would not be authorized by law, nor would the motion to issue the first order for $64.61 to the relator, even though passed by the number of votes ordinarily requisite for such business, constitute a ratification.

"Where a contract is void on the ground of public policy or against a statute, its confirmation is affected with the original taint": Negley v. Lindsay, 67 Pa. 217.

"A mere ratification cannot, of course, correct any defect in the terms of the contract. If it is in its very terms invalid for want of consideration or for any other defect, a mere ratification can add nothing to its binding force." Same p. 228.

To the school directors, as agents, the Commonwealth has delegated the authority to appoint teachers, but when the teacher to be appointed sustains a certain relation to a member of the board, a definite number of votes are required to render her employment legal. It is just as necessary that this statutory requirement be observed as that the votes be recorded. One is as essential as the other.

When the officers fail substantially to pursue the material requirements of a statutory enactment under which they are acting the corporation is not bound. When this is not done no subsequent action of the corporation can make an ultra vires contract effective: Dillon on Mun. Corp., vol. 2, section 797.

In the present case it is not the power to make the contract, but the manner of its exercise that renders it ineffective, a distinction noted in the cases.

If the statutory requirement was not observed, then it follows that the employment was not authorized by law, and no order, for services rendered under it, could lawfully issue.

The simple question for our determination is, whether the president shall be required to sign the order issued?

It becomes unnecessary, therefore, to discuss the authority of the superintendent to transfer some other teacher of the kindergarten department or to transfer the relator, had the order issued for the amount of salary fixed by the executed contract.

Section 1205 of the Code provides that, in school districts of the third class, "all contracts with teachers shall be in writing, in duplicate, and shall be executed on behalf of the board of school directors by the president and secretary and signed by the teacher."

It should be noted that while the board fixed the salary of the kindergarten teacher at $129.22 per month, nothing appears to have been said about a new contract with the teacher to be by the superintendent transferred, or as to any change in existing contracts.

The Act of May 23, 1919, P. L. 261, section 1205 A, being an amendment to the code, provides that "the salary of any teacher in any of the school districts of the Commonwealth may be increased at any time during the year for which such teacher is employed, whenever the board of school directors of the district deems it necessary or advisable to do so. Whenever such increase is determined upon by the action of the school board, by mutual consent of the parties, the contract existing between them may be cancelled. Thereupon a new contract shall contain no changes from the original contract, except in the matter of salary, unless expressly agreed upon between the contracting parties."

574        GARLAND, Appellant, *v.* RIEBE.

Opinion of Court below—Opinion of the Court. [78 Pa. Superior Ct.

Under this amendment when an increase of salary has been determined upon by the board the cancellation of existing contracts does not appear to be mandatory, but may by mutual consent be cancelled, and it is only when this has been done that a new contract shall be entered into, specifying a larger salary but with no other change.

There is no allegations of a mutual consent in this case to the cancellation of the contract executed on the second day of August, 1920, and, if our interpretation of this amendment is correct, there is no need for a consideration of the effect of the failure to enter into a new contract.

And now, November 4, 1920, this case having been fully heard and argued by counsel in the issue joined upon demurrer of relator to answer of respondent, the demurrer is overruled, the alternative writ of mandamus set aside, and judgment entered in favor of defendant, the costs to be paid by the school district of the Borough of Lansford.

*Errors assigned* were the judgment of the court, and the refusal to issue the writ as prayed for.

*B. J. Duffy,* for appellant.—The duties of the president of the school board in signing the order were purely ministerial, and performance will be compelled by mandamus: Com. v. Larken, 216 Pa. 128; Panther Valley Water Co. v. Blaney, 66 Pa. Superior Ct. 253; Breslin v. Early, 36 Pa. Superior Ct. 49.

No appearance, and no printed brief for appellee.

PER CURIAM, March 3, 1922:

Every phase of the question involved is thoroughly considered and rightly decided in the opinion of the court below, which will be published in full in the report of this case.

For the reasons therein given the decree is affirmed.