## Winton Borough School Directors.

*School law—Removal of school directors—Petition for removal—Answer—Practice, C. P.—Act of May 18, 1911, P. L. 309.*

1. Where a competent number of duly qualified residents and taxpayers of a school district petition for the removal of school directors, and the respondents file an answer which amounts to a plea of guilty of the charges, the court may remove such directors and appoint other qualified persons for the unexpired term.

2. School directors will be removed where it appears that they neglected to make written contracts with teachers, did not have their votes recorded on the minutes, did not prepare proper budgets, and did not award contracts for supplies in the manner provided by law.

Petition for removal of school directors. C. P. Lackawanna Co., June T., 1923, No. 152.

*Will Leach* and *J. L. Rafter*, for petitioners.

*M. J. Martin* and *M. F. Lally*, for respondents.

MAXEY, J., July 20, 1923.—Twenty-three residents and taxpayers of the School District of the Borough of Winton, a school district of the third class, petitioned the court requesting the removal from office of the following school directors, Michael Munley, John M. Spirko, Michael Maceyko, John Brown, James McGinnis, Joseph Kamensky and James Gaughan, for certain specific violations of the School Code of 1911, with amendments thereto. The answer of the respondents amounted to a plea of guilty to at least the following charges:

Charge 2 *(b)*. The school directors authorized payment of bills without reference to whether the funds to pay the said bills were available.

This violates section 511 of the School Code of 1911, which provides, *inter alia:* "No school order shall be authorized by the board . . . unless there are sufficient funds in the treasury of the district to pay the same, and no school order shall be made payable at any time in the future."

Charge 3. Said school directors neglected to obtain written reports of all taxes collected by the tax collector each month of the year.

Section 553 of the School Code requires every collector of school taxes to make a written report to the secretary of the board of school directors at the end of every month, of the amount of taxes collected by him during the same month, etc. It is inferentially within the power, and it is the duty, of the school board to compel the collector to do this.

Charge 4. The school directors authorized the payment of money in an illegal manner and for illegal objects, when they authorized a trip to Washington, D. C., for the graduating class of 1922, and when they authorized the payment of $700 for trips of two directors and the principal to Chicago, and $225 for a trip of two directors and a principal to Harrisburg for two days.

Section 410 of the School Code of 1911, as amended by the Act of April 18, 1919, P. L. 56, provides that "the board of school directors of each district may appoint from among their number one delegate to any State convention or association of school directors held within the Commonwealth." There is no authority for the acts charged against the respondents in paragraph 4 of the petition before us.

Charge 5. The said school directors purchased fuel from P. F. Godfrey without securing bids for the same or entering into a contract as required by the School Code.

Section 708 of the School Code provides that "all supplies of the second class, costing $300 or more, shall be awarded and purchased only after public notice has been given by advertisement," etc. "The board of school directors

shall accept the lowest bid or bids, kind, quality and material being equal, but shall have the right to reject any and all bids."

Section 403 of the School Code provides, *inter alia:* "The affirmative vote of a majority of all the members of the board of school directors in every school district in this Commonwealth, duly recorded, showing how each member voted, shall be required in order to take action on the following subjects: . . . Entering into contracts of any kind, including the purchase of fuel or any supplies, where the amount involved exceeds $100."

Charge 6. Said school directors transferred money from the sinking fund to pay the running expenses of the schools, in violation of section 519 of the School Code, as shown by extracts of the minutes of the meeting of Aug. 28, 1921, Minute Book, page 14, attached to the petition.

Said section 519 of the School Code provides that the funds in the sinking fund "shall be used only to liquidate the school indebtedness existing at the time of the approval of this act (of 1911), and interest thereon."

Charge 7. Said school directors employed teachers without the affirmative vote of a majority of all the members of the board of school directors, duly recorded, showing how each member voted, as required by section 403 of the School Code, and that they never entered into written contracts with the said teachers, as required by section 1205 of the School Code.

In answer to charge 7, the respondents aver that the making of written contracts with the school teachers is immaterial, and that it is immaterial to place the votes on the minutes, inasmuch as the whole board voted unanimously for the teachers. The error of this argument is evident from a reading of section 1205 of the School Code, which provides, "In school districts of the second, third and fourth class, all contracts with teachers shall be in writing, in duplicate, and shall be executed on behalf of the board of school directors by the president and secretary and signed by the teacher," and from a reading of section 403 of the School Code, which provides that "The affirmative vote of a majority of all the members of the board of school directors in every school district in the Commonwealth, duly recorded, showing how each member voted, shall be required in order to take action on the following subjects: . . . appointing . . . superintendents, . . . principals and teachers. . . ."

In addition to admitting the truth of the aforesaid charges, the answer of the respondents to charge 1, which alleges failure to prepare a budget, is not unequivocal, and yet if this were the only charge preferred against the respondents, we would go into a hearing before deciding the issue against them. However, as stated above, this is only one of many charges, and to most of the charges the respondents have pleaded guilty.

Section 217 of the School Code of 1911 provides: "If the board of school directors in any district in this Commonwealth shall . . . refuse or neglect to perform any duty imposed upon it by the provisions of this act, any ten resident taxpayers in said district may present their petition in writing . . . to the Court of Common Pleas of the county in which such district . . . is located, setting forth the facts of such refusal or neglect of duty on the part of such school directors; whereupon the said court shall grant a rule upon said school directors . . . to show cause why they should not be removed from office. . . . If, when no answer is filed denying the facts set forth in said petition, the court shall be of the opinion that any duty imposed on said board of school directors, which is by the provisions of this act made mandatory upon them to perform, has not been done or has been neglected by them, the said court shall have the power to remove said board, or such of its num-

4 D. & C.

ber as in its opinion is proper, and appoint for the unexpired terms other qualified persons in their stead. . . ."

Jefferson Township School District's Directors, 2 D. & C. 679, Ray, P. J., page 685: "In our opinion, such school directors of these two school districts as failed to respond to a legal notice to meet, at a legal time, for the reorganization of this joint school for the school year 1922-1923, either refused or neglected, or both, to perform an important official duty mandatory on them under the law. On the hearing of this case, it was painfully manifest that an unfortunate condition has grown out of this controversy; a condition which we most sincerely regret. . . . Pride of opinion should never outweigh our patriotic desire, whether we be school directors or otherwise, to promote the very best interests of the boys and girls of our public schools. These schools are the people's colleges, and upon their success depends in high degree the perpetuity of the Republic." Thereupon the court proceeded to remove the School Directors of Jefferson Township, Greene County, Pennsylvania. See, also, Removal of Directors, Dunmore Borough School District, 23 Lacka. Jurist, 272, in which we removed certain School Directors of the Dunmore Borough School District for violations of the Code.

The Supreme Court, in Hanover School District Audit, 265 Pa. 157, thus refers (page 164) to the importance of complying with the provisions of the School Code: "In section 2613 (of the School Code) it is provided that 'any school order issued in any other manner or for any other purpose than herein authorized shall, if paid, be disallowed by the auditors and charged against the person or persons voting for or approving the same.' It thus appears that in issuing orders for the payment of money, the directors must be governed entirely by the provisions of the act with respect to both the manner of payment and the purpose. . . . While our conclusion imposes a heavy burden upon the appellants, the court is without power to relieve them from the effect of their own carelessness or error, whichever it may be: Flinn v. Philadelphia, 258 Pa. 355. The duty of this court is to execute the legislative will in the manner prescribed in statutes. . . ."

So important do the courts regard strict compliance with the School Code that it has been held that the appointment of a teacher in a common school is not valid unless there has been an affirmative vote of a majority of the members of the board of school directors, duly recorded, showing how each member voted: Waltman v. Albany Township School District, 64 Pa. Superior Ct. 458. It has been held that when the daughter of a member of the school board is employed as a teacher without the affirmative vote of three-fourths of all the members, the contract is void: Garland v. Riebe, 78 Pa. Superior Ct. 567.

If the courts have required strict compliance with the Code in spite of the fact that such compliance has worked a hardship on school teachers employed as in the cases cited, said school teachers being themselves not responsible for such Code violations, it is certainly the duty of the court not to attempt to hinder the infliction of those penalties which almost automatically fall on the school directors who are actually responsible for gross violations of the Code.

The provisions of the School Code are not vague and the duties imposed are not onerous. School directors know that fuel, upkeep, supplies, books, desks, paper and pencils and other articles will be required each school year. Section 563 of the School Code of 1911, as amended by the Act of April 5, 1921, P. L. 91, explicitly provides: "The board of school directors of each school district of the second, third or fourth class shall, annually, at or before the time of levying the annual school taxes, prepare a budget of the amount

of funds that will be required by the school district in its several departments for the following fiscal year. Such budget shall be apportioned as to the several classes of expenditures of the district as the board of school directors thereof may determine; and thereafter no moneys apportioned for any class of expenditures shall be used for purposes other than designated for said class in said budget until after affirmative action by the board of directors at a legal meeting. The total amount of such budget shall not exceed the amount of funds, including the proposed annual tax levy and State appropriation, available for school purposes in that district."

The school board must secure bids on supplies of the first class, which includes books, furniture, writing material, etc., from two or more firms, manufacturers or dealers: Section 707 of the School Code. In the purchase of fuel and other supplies they must give public notice by advertisement, published once a week for three weeks, in not less than two newspapers of general circulation: Section 708 of the Code. It is the intent of the law that the list of supplies provided for in the budget should be sufficiently complete so that the district need not buy supplies at retail. The Code also requires that the affirmative votes of the majority of the members of the board, duly recorded, showing how each member voted, shall be required in order to take action on entering into contracts of any kind, including the purchase of fuel or any supplies, where the amount involved exceeds $100, appointing officers and teachers, fixing salaries, and many other subjects as set forth in section 403 of the Code. Section 564 of said Code, as amended by the Act of April 5, 1921, P. L. 91, provides that "in all school districts of the second, third and fourth class, each school order shall state on its face the particular class of expenditure of the annual school budget upon which the same is drawn." Such orders must not be drawn unless there are sufficient funds in the treasury at the time to pay the order: Section 511 of the Code. A school director should pay attention to the reading of the minutes of the previous meeting and see to it that his vote is properly recorded, because he may be personally liable if the minutes are incorrect or if he is recorded as voting in favor of an illegal measure.

The foregoing is not a digest of all the provisions of the Code, but if the foregoing procedure is followed, the affairs of the school districts will likely be well administered. The School Code permits the appointment of three paid officials: First, a treasurer, who receives an ample compensation, in many instances 2 per cent. of the amount of funds paid out on school orders; second, a secretary, who receives for his services such compensation as the board shall fix, the amount of which shall be reported annually to the Superintendent of Public Instruction: Section 323 of the Code; and, third, a solicitor, whose services should be in command at every meeting to direct the board in the course of law.

It is evident that the affairs of the Winton Borough School District have long been flagrantly mismanaged and that the existence of the School Code has been disdainfully ignored. When the Code is obeyed, waste and misappropriation of funds is almost impossible. When the Code is treated with contempt, public funds are headed for private pockets.

School directors, like other public officials, must understand that public office is not a public snap. Those who hold public office must faithfully discharge their responsibilities. School directors exercise powers vital to the community's political and social well-being. They are trustees of vast sums of public money. They can rightfully expend this money only for the public good and in a manner strictly obedient to the prescriptions of the law. These

4 D. & C.

prescriptions are not vain mandates. They are to be obeyed, and it is the duty of the courts to compel obedience. To permit gross departures from the plain provisions of the School Code is to open the door to the dissipation of the public revenues and the demoralization of the public schools. It is a common boast that in our public school system lies the guaranty of our country's security and from the public schools come the future citizens who will shield and advance the nation's name and fame. To the end that this ideal should not be wrecked on the rocky shores of the real, courts should be vigilant in compelling those who hold the keys to the public funds and who are in chief command of the public schools to steer clear of lawlessness, extravagance and waste, all of which are closely allied to corruption and fraud.

The citizens who instituted these proceedings against the Winton Borough School Board are entitled to commendation. If all citizens were more vigilant in the supervision of public affairs, we would not have so many reasons to complain of the ills of government. The indifferent citizen fits into the schemes of a political burglar as a sleeping watchman fits into the plans of a bank burglar. In the organization of our government, local, state and national, supervision of public affairs and public officials is left almost exclusively to the people. In any business whatsoever there are efficient results only when there is efficient supervision. Every country, therefore, has as good a government as it deserves, and only those countries have good government where the people want it badly enough to strive and fight for it. The burdens of free government should be borne by all who accept its benefits.

The form of government is not an end in itself; it is only a means to an end, and the end is the welfare of the governed. A bad form of government well administered is preferable to a good form of government badly administered. The remark of Aristides, made twenty-four centuries ago, still holds true, that not stones, nor wood, nor laws, nor the art of artisans make a state, but citizens who know how to take care of the commonwealth, these are cities and walls.

## Decree.

Now, July 20, 1923, upon due consideration of the petition and the answer, we determine that no answer has been filed denying the major portion of the charges specified in said petition and the facts cited in support of the same; and the court being of the opinion that the duties imposed on said Board of School Directors of Winton Borough School District, which, by the provisions of the School Code and the other laws of the Commonwealth, are made mandatory upon them to perform, have not been discharged and have been neglected by them, the court makes absolute the rule granted in the above entitled case, and it is ordered and decreed that Michael Munley, John M. Spirko, Michael Maceyko, John Brown, James McGinnis, Joseph Kamensky and James Gaughan, constituting the Board of School Directors of said School District of the Borough of Winton, Lackawanna County, Pennsylvania, be and they hereby are removed from said office, and are enjoined, they and each of them, from any further exercise of the duties thereof, and are hereby directed forthwith to turn over to their successors in said office, by this decree appointed, any and all books, papers, records, moneys and all other property whatsoever in their custody or control, or in the custody or control of either of them, belonging to the said school district, and to pay the costs of this proceeding; and, pursuant to section 218 of the School Code, the said persons so removed from the office of school director shall not be eligible to serve again as school director for the period of five years hereafter.

And, further, it is hereby ordered and decreed that the following resident taxpayers of the said School District of the Borough of Winton, Lackawanna County, Pennsylvania, be and they hereby are appointed school directors of said school district to fill the vacancies existing by reason of the removal of the aforesand school directors, to wit: Thomas M. Driscoll, to fill the unexpired term of Michael Munley; Samuel Weiss, to fill the unexpired term of John M. Spirko; Martin Pitoniak, to fill the unexpired term of Michael Maceyko; David Coplan, to fill the unexpired term of John Brown; John M. Langan, to fill the unexpired term of James McGinnis; Sebastiano Possanza, to fill the unexpired term of Joseph Kamensky, and James J. Sweeney, to fill the unexpired term of James Gaughan, said appointees to qualify according to law.

From William A. Wilcox, Scranton, Pa.