## Ambridge Borough School District

74

*Eugene A. Caputo,* for petitioner.

SOHN, J., March 24, 1947.—The Board of School Directors of the Borough of Ambridge filed a petition for a declaratory judgment. In the petition it is averred that the budget for the school year 1946-1947 was adopted in May 1946. In December 1946 the professional employes of the school district presented a request to the school board for a cost of living increase in salary in the amount of $400 for each employe. Petitioners aver that they have made a thorough study of the budget and finances of the school district. This study discloses that petitioners can make available sufficient funds to grant an increase of $200 to each professional employe, and $100 to the other employes of the school district. The funds alleged to be available are: (1) Additional tuition received and anticipated during the current fiscal year in the amount of $19,-623.87; (2) an unexpended balance of $5,313.78 in Department H-2 of the budget—improvement of grounds; and (3) an unexpended balance of $5,300 in Department H-5—improvement, alterations of old buildings; a total of $30,237.67. The unexpended balances in Departments H-2 and H-5 are available because labor and materials for which the funds were appropriated are not available. The amount necessary to provide the salary and wage increase is $29,300. It is alleged in the petition that the increases cannot be granted without exceeding the adopted budget and appropriations. Petitioners aver they have been advised and informed that payment of such increases is without legal authority, and if made, petitioners would be subject to surcharge. Seven professional employes of the School District of the Borough of Ambridge join in

the prayer of the petition. The school directors and professional employes of the school district seek a declaratory judgment on the following questions:

1. Is the present high cost of living an emergency within the meaning of section 563 of the School Code of May 18, 1911, P. L. 309, as amended, 24 PS §610?

2. May the board of school directors grant to the professional employes of said school district an increase in salary on account of the current high cost of living, which increase would cause the total appropriations contained in the budget for the current fiscal year to be exceeded?

3. May the board of school directors appropriate to the proper departments affected by the proposed increase the unanticipated revenue resulting from additional tuition fees, amounting approximately to $22,000?

4. May the board of school directors transfer the sum of $5,000 from Department H-2 and $3,000 from Department H-5, both of which sums will remain unexpended during the fiscal year of 1946-1947, to such other departments as may be affected by the proposed increase in salaries? (These amounts were shown by the testimony to be $5,313.78 and $5,300, respectively).

At the hearing on the petition, Dr. N. A. Smith, Superintendent of Schools of the School District of the Borough of Ambridge, testified. The testimony of Dr. Smith and the exhibits offered support the allegations in the petition, and we accept them as established facts in this case. Dr. Smith said he did not remember any discussion by the school board when the budget was adopted of the possibility of the Office of Price Administration being abolished. There was received in evidence a tabulation from Fishers' Reports using 1926 as the basis of a normal price structure of 100. This tabulation shows the purchasing power of a dollar on May 27, 1946, about the time of the adoption of the

budget, at 83.7. This tabulation shows the purchasing power of a dollar on February 10, 1947, about the date of the hearing, at 66.3. There has been a decrease of 17.4 cents per dollar in purchasing power from the date of the adoption of the budget to the date of the hearing. We accept this as a correct statement of fact. There also appears of record a statement by the school solicitor that the Ambridge school district expects to retire a number of bonds and therefore an increase of salary and wages could be maintained without an increase in millage. Salaries were increased and the tax rate reduced during the previous fiscal year. The reduction in millage was possible because of the retirement of bonds. The lowest salary received by a professional employe is $1,800, and this salary is received by two teachers. There are approximately 140 professional employes and the average salary is more than $2,400. It appears of record that the members of the board of school directors are unanimously willing to grant an increase.

Although no question has been suggested by counsel as to the propriety of this proceeding, two preliminary questions must first be answered. The first is, do we have jurisdiction in this matter, under the Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840? Section 2 of the act provides:

"Any person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise, and obtain a declaration of rights, status, or other legal relations thereunder."

We are of the opinion that we can, under the act, assume jurisdiction of this petition. Since there is an

actual controversy, antagonistic claims and the assertion of a legal relationship, status, right or privilege, which was important to the parties, and for which no other remedy was available, or if available, was not being pursued by those persons involved, this is a proper case for the granting of relief by a declaratory judgment: Spencer, etc., v. Spencer et al., 47 D. & C. 192.

The second preliminary question is whether such proceeding is conclusive in the absence, as parties to the proceeding, of taxpayers of the Ambridge school district. Although recent decisions of the courts have enlarged the jurisdiction of the court to adjudicate cases under the Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840, it seems to us fundamental that all parties in interest should be parties to the proceedings. Mr. Chief Justice Moschzisker, in Kariher's Petition (No. 1), 284 Pa. 455, said (pp. 471-472):

". . . that jurisdiction will never be assumed unless the tribunal appealed to is satisfied that an actual controversy . . . exists between parties, *all of whom* are sui juris and *before the court,* and that the declaration sought will be a practical help in ending the controversy: . . . and even then, such rights will not be determined *unless all parties concerned in their adjudication are present and ready to proceed with the case (see section 11, of the act) so that the judgment rendered will make the issues involved res judicata in the full sense of that term.*" (Italics supplied.)

In the instant case, the petition comes from public authorities and the questions presented involve the disposition of public funds. A declaratory judgment is available for the determination of the powers of governmental subdivisions and officers thereof: Mansfield Borough School District v. Mansfield High School Association, 9 D. & C. 113; Steelton School District's Application, 31 Dauphin 75; Dunmore School District's Petition, 25 Lack. 170; School District of Union Town-

ship v. Walton et al., 19 Municipal Law Reporter 240; Martin v. School District, 83 Pitts. L. J. 58. We concur with Knight, P. J., in Norristown Borough School District v. Hoffman, 24 D. & C. 56, 61, where he said: "We still entertain grave doubts as to our authority to enter a declaratory judgment in this case." This question is not raised in this proceeding, and since petitioners and those who join in the petition desire a decision on the present petition, and the conclusion we reach does not adversely affect taxpayers, we will render our decision without further considering this question.

In Wilson et ux. v. Philadelphia School District et al., 328 Pa. 225, the Supreme Court said:

"The constitution of 1874 fortified it [the school system] and directed the legislature to maintain 'a thorough and efficient system of public schools': Article X, Section 1. The school system, or the school districts, then, are but agencies of the state legislature to administer this constitutional duty. As such agencies, they do not possess the governmental attributes of municipalities. They are not municipal corporations: . . . not having legislative powers. They have been held to be . . . agencies of the state: School District v. Fuess, 98 Pa. 600. They possess only the administrative powers that are expressly granted by the central government or inferred by necessary implication."

1. Is the present high cost of living an emergency within the meaning of section 563 of the School Code of May 18, 1911, P. L. 309, as amended, 24 PS §610? We are of the opinion that this question must be answered in the negative. Section 563 of the School Code of 1911, as amended, provides in part as follows:

"The board of school directors may, *during any fiscal year, make additional appropriations or increase existing appropriations to meet emergencies, such as epidemics, floods, fire, or other catastrophes,* the funds therefor to be provided from unexpended balances in existing appropriations, from unappropriated revenue,

if any, or from temporay loans. Such tempoary loans, when made, shall be approved by a two-thirds vote of the board of school directors." (Italics supplied.)

We have found only two cases in which this part of section 563 has been construed by the courts. The first case decided in 1942, is Redstone Township School Directors et al. v. Verbanic et al., 44 D. & C. 347. In this case, a general strike was undertaken by the professional employes of the school district. The school board passed a resolution purporting to meet the demands of the employes for a salary increase. A declaratory judgment was sought to determine the legality of the action by the school board. Judge Dumbauld said in part (p. 354):

"By the express terms of this statute, a board of school directors is given authority to make additional appropriations or increase existing appropriations to meet emergencies. To indicate the precise meaning of the word 'emergencies' the legislature indicates what meaning it gives to the word. Epidemics constitute emergencies; floods, which may destroy much school property, are classified as emergencies; fire, another destructive agent which may lay waste one or more of the school buildings of the district, constitutes an emergency. Other catastrophes are contemplated by the legislature and such other catastrophes are classified as emergencies. The comprehensive term 'other catastrophes' is to be construed in accordance with the rule that such other catastrophes must be of a like character to such situations as are specifically enumerated. We cannot, by any stretch of construction, classify a strike of contractual professional employes as 'another catastrophe', comparable with epidemics, floods, and fires.

"A sane, tolerant, and comprehensive view of the situation, as it existed in this school district on November 21, 1941, is required in arriving at a correct solution. We find that the budget was adopted on May 21, 1941. The school term began on September 3, 1941. Sometime between these two dates, presumably near the latter date, all the professional employes of the petitioning school district were required to sign contracts with the school district, in which wages and salaries of such professional employes are specifically set forth. An increase in the cost of living which would or could seriously affect the purchasing power of professional employes as of November 21, 1941, must of necessity have been anticipated in September of that year. When these professional employes, therefore, accepted the terms of their contracts for the school year beginning on September 3, 1941, they were in honor and in legal duty bound to accept any sacrifices involved in the carrying out of the terms of these contracts. They could not possibly, by a concerted breach of the solemnly executed contracts on November 21, 1941, create an emergency which would justify the school board in increasing the budget allowance for the payment of the wages and salaries by the sum of $29,273.63.

"If petitioners, the school boards, could not, by the exercise of prudence, in May, 1941, foresee the conditions as they actually existed in September and November, 1941, an awakening, as a result of the unlawful conduct of the professional employees on November 21, 1941, could likewise not possibly be considered an emergency justifying their action as expressed in the resolution of November 26, 1941."

The other case was decided in 1946: Robinson Township School District's Petition, 58 D. & C. 217. In this case, Judge Ellenbogen held (p. 222):

"The statute refers to 'emergencies, such as epidemics, floods, fire, or other catastrophes.' The enumer-

ation of physical disasters such as floods and fire, which would impair the usefulness of school buildings, and of epidemics which would endanger the health of the community, was not intended to limit the general term 'emergencies' which precedes them to other physical catastrophes.

"The statute does not limit the School Board to emergencies of a 'physical' nature. Had the Legislature intended to do so, it could have easily said so. It deliberately inserted the broad term 'emergencies' to provide for any emergency brought about by act of God or man which imperiled the school operations.

"The immediate and actual danger to the operations of a school district posed by the threatened loss of efficient and qualified teaching personnel and the certain inability of replacing such teaching personnel is no less an emergency than a flood which imperils the usefulness of a school building.

"In the case of Redstone Township School Directors et al. v. Verbanic et al., 44 D. & C. 347 (1942), Judge Dumbauld of Fayette County held that the term 'emergency' did not permit an increase in salary of school teachers during the school year in excess of the budgetary provisions, but the factual situation in that case differs greatly from the extraordinary situation here presented.

"The school budget of Robinson Township was made up, as required by law, in the early spring of 1946. The budget sessions were held in March and April of this year and the budget was finally adopted on May 17, 1946. This was long after the end of the war.

"Up to that time, the price level on goods and commodities was rising but was doing so slowly and gradually. There was no indication at that time, and the directors of the Robinson Township School District could not then foresee that the Office of Price Administration would suddenly be discarded and that the price

level on goods and commodities would be permitted to leap up and reach unprecedented heights. School directors are mere mortals and not supermen and could not foresee in April, 1946, that the price level in December, 1946, would be so far out of reach of all the teachers as to threaten the continuity of school operations.

"Man-made emergencies are no less destructive than physical disasters. Indeed, the last war has taught us that they often are far more disastrous."

We cannot adopt the reasoning in the opinion by Judge Ellenbogen. We do agree with his statements as to the need for increased remuneration for many school teachers. The courts, however, under our system of government, are not empowered to legislate. We do not have the authority to correct social conditions. Such power has been expressly reserved to the legislature. The Constitution has placed the educational system in the hands of the legislature, free from any interference from the judiciary save as required by constitutional limitations. We may only, in problems such as this, ascertain the legislative intent: Ehret v. Kulpmont Borough School District, 333 Pa. 518. If the courts transgress on the province of the legislature, we will ultimately be governed by men and not by law. The bulwark of a free people is the expression of the will of the people in the laws passed by their duly elected representatives.

Where a statute amends part of a general code, such as the School Code, so that its apparent effect is to materially modify, partially destroy, or interfere with the general purpose of the code by conflict with other sections, the amendment should be strictly construed and made to conform to the general purpose, unless the legislative intent is clearly and specifically otherwise. It should not be given the drastic effect of destruction by indirection: Ehret v. Kulpmont Borough School District, 333 Pa. 518.

The Supreme Court in Hanover School District's Audit, 265 Pa. 157, thus refers to the importance of complying with the provisions of the School Code:

"It thus appears that in issuing orders for the payment of money, the directors must be governed entirely by the provisions of the code with respect to both the manner of payment and the purpose. . . . The duty of this court is to execute the legislative will in the manner prescribed in statutes so long as no constitutional provision is violated, regardless of the hardship of a particular case or whether our opinion as to what the law ought to be coincides with that of the legislature: McKibben v. Martin, 64 Pa. 352, 361; Weber v. Reinhard, 73 Pa. 370, 374."

A school board cannot increase a teacher's salary without observing the statutory requirements: Garland v. Riebe, 78 Pa. Superior Ct. 567.

The act in question permits additional or increased appropriations "to meet emergencies, such as epidemics, floods, fire or other catastrophes." The general classification here is emergencies. These emergencies are then classified as epidemics, floods, fire or other catastrophes, none of which apply to the facts in this case. It is not contended in this case that the situation comes within the term catastrophe. A catastrophe is defined in Webster's Dictionary as, "A final event, usually of a calamitous or disastrous nature. A sudden calamity; a great misfortune." It is synonymous with disaster. It means a notable disaster; a more serious calamity than might ordinarily be understood from the term casualty. An emergency is a sudden or unexpected occurrence or condition calling for immediate action. It is a condition of things appearing unexpectedly; it is an unforeseen occurrence. Existing and continuing conditions are never considered emergencies. Under a statute in New Jersey, an emergency in municipal affairs has been held to be "equivalent to a public calamity, resulting from flood, fire or like

disaster, or through some unusual occurrence, not reasonably subject to anticipation by any provision of the local appropriating body": Lyons v. City of Bayonne, 101 N. J. L. 455, 130 Atl. 14. Here the increased cost of living was evident when the budget was adopted in May 1946. As a matter of fact, it was then considered, and, to some extent, a provision therefore was made by increasing salaries of all professional employes. This increase may not have been sufficient. The fact that an increase was granted is evidence that the school board considered the increased cost of living, and this fact contradicts the contention that the present situation is the result of an emergency.

We are confronted in this case with the necessity of construing the part of the statute herein referred to. In Sutherland's Statutory Construction, section 4908, page 393, we find the following rule: "thus when two or more words are grouped together and ordinarily have a similar meaning, but are not equally comprehensive, the general word will be limited and qualified by the special word".

The Statutory Construction Act of May 28, 1937, P. L. 1019, sec. 551, 46 PS §563, provides that "every law shall be construed, if possible, to give effect to all its provisions". Section 63 of the act provides as follows:

"Whenever a general provision in a law shall be in conflict with a special provision in the same or another law, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions be irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the Legislature that such general provision shall prevail."

Words of a general import are limited by words of restricted import immediately following and related to the same subject: Bell Telephone Company of Pennsylvania v. Public Service Commission, 119 Pa. Superior Ct. 292; Frederick's Estate, 333 Pa. 327. The necessary construction of section 563 of the School Code is that the budget may be exceeded in the event of the happening of any one of the particular class of emergencies which fall within the definition of a catastrophe, or to the particular catastrophes referred to in the act, that is, epidemics, floods and fires.

Applying the foregoing principles of law to section 563 of the School Code, the meaning of the legislature becomes clear. The important phrase is the following: "Emergencies such as epidemics, floods, fire or other catastrophes." It is to be noticed that this group of words commences with the general word, "emergencies" and ends with the general word "catastrophes". Between the two, the special words "epidemics", "floods" and "fire" appear. However, while the word catastrophes has a meaning somewhat similar to emergencies, it is not nearly so general. Epidemics, floods, and fires may all be considered as catastrophes. However, there may be many emergencies which are not catastrophes. It seems to us that what the legislature intended was that the budget could be exceeded in the event of the happening of any one of that particular class of emergencies, which fall within the definition of a catastrophe. In other words, it is not sufficient that a situation may be an emergency. To come within the purview of the legislative enactment it is necessary that the situation be a catastrophe. The act points out three specific instances of catastrophes, i. e., epidemics, floods, and fires, but the legislature realized that there might be catastrophes other than the three specifically enumerated, and made it clear that it intended to provide for any catastrophe. For instance, a tornado which might totally destroy a school building would

certainly be a catastrophe. The important word in section 563 is "catastrophe", not "emergencies". Catastrophe is a special class, or kind of emergency. The legislature clearly intended to extend the provisions of section 563 to all catastrophes, but not to all emergencies. The facts in this case do not come within the provision of the act. The high cost of living is not an emergency in the nature of a catastrophe, as contemplated by the legislature.

2. May the board of school directors grant to the professional employes of said school district an increase in salary on account of the current high cost of living, which increase would cause the total appropriations contained in the budget for the current fiscal year to be exceeded?

This question must be answered in the negative. The provisions of the act of assembly hereinbefore discussed limits the expenditures for a particular purpose to the amount established and adopted in the budget. The budget may be exceeded only in the event the situation is an emergency, epidemic, flood, fire or other catastrophe. Our conclusion as to the first question and the reasons given apply as well to the second.

3. May the board of school directors appropriate to the proper departments affected by the proposed increase the unanticipated revenue resulting from additional tuition fees, amounting approximately to $22,000?

For the reasons set forth in the discussion of the first question, this question must be answered in the negative. Every municipality and quasi-municipality, such as a school district, is a creature of the State and has no other powers than those conferred by the State. No school board has any powers not conferred by the School Code and a board of school directors is circumscribed in its activity by the provisions of the School Code. That same code specifically restricts school directors in their official action and provides penalties

for violation of the express mandates of the law relating to the administration of the school system.

Section 516 of the School Code as amended, 24 PS §364, contains the following sentence:

"The use or payment of any public school funds of any school district in this Commonwealth, in any manner or for any purpose not provided in this act, shall be illegal."

Section 517 of the School Code, as amended, 24 PS §482, contains the following:

"Any school director voting for, or any officer approving, a school order for the payment of school funds for any other purpose, or drawn in any other manner, than that provided in this act, shall, together with the surety or sureties on his bond, in addition to the penalty herein provided, be individually liable to the district for the amount thereof."

A study of the foregoing section of the code shows that in effect, the adoption of a budget in the manner provided by law, is a contract with the taxpayers of the school district that the expenditures of the board of school directors for the ensuing fiscal year shall not exceed the amounts set forth in the budget. Any such increase is illegal and void, and any director or official of the school district voting for, approving, or in any way participating in exceeding the budget, is guilty of an illegal act. School district budgets are intended to be religiously followed to the letter, and are not mere rough estimates to be adopted and then forgotten. Any director voting for, or otherwise participating in any payment or contract which causes the amounts appropriated for specific items in the budget to be exceeded, becomes personally liable to the district for the excess, and is also subject to removal from office by the court for disregard of duty.

The budget fixes the maximum amount which may be expended for teachers' salaries during the fiscal year.

The board of school directors must keep such expenditures within the amount approved in the budget.

4. May the board of school directors transfer the sum of $5,000 from Department H-2, and $3,000 from Department H-5, both of which sums will remain unexpended during the fiscal year of 1946-1947, to such other departments as may be affected by the proposed increase in salaries?

The fourth question is answered in the negative. Another part of section 563 of the School Code, as amended, provides:

"The board of school directors shall have power to authorize the transfer within the same fund of any unencumbered balance, or any portion thereof, from one spending agency to another, but such action shall be taken only during the last nine months of the fiscal year, and, except as hereinbefore otherwise provided, no moneys apportioned to any class of expenditures shall be used for purposes other than designated for said class in said budget. The total amount of such budget shall not exceed the amount of funds, including the proposed annual tax levy and state appropriation, available for school purposes in that district."

A careful reading of this section answers the question submitted. This section permits a transfer *"within the same fund—*from one spending agency to another" and it is provided that *"no moneys apportioned to any class of expenditures shall be used for purposes other than designated for said class in said budget."* Salaries of teachers are found in Department B—expenses of instruction. The funds proposed to be transferred are in Department H—capital outlay. The proposed transfer from Department H to Department B would clearly be in violation of the law. The funds proposed to be transferred may, under proper conditions only, be transferred to other items in Department H.

If the employes of the Ambridge School District are to secure additional compensation during the current fiscal year, authority therefor must come from the legislature. The court would, in this case, approve the increases in salaries which have been proposed if there were legal authority to permit such increase. The school board is willing to grant an increase, and provision can, of course, be made for a proper increase in the budget of the fiscal year 1947-1948. Relief may and probably will be afforded by the legislature, now in session. The Act of May 28, 1943, P. L. 786, permitted temporary increases. This act expired at the end of the fiscal school year 1943-1944. Until the legislature acts or until the next fiscal year, the school board cannot afford relief to the employes in the manner suggested in these proceedings.

We therefore make the following

### Decree

And now, to wit, March 24, 1947, the petition of the Board of School Directors of the Borough of Ambridge, Beaver County, Pa., praying for a decree construing the provisions of the School Code of the Commonwealth of Pennsylvania, with respect to the budget for the fiscal year 1946-1947 having come on for adjudication after a full hearing, it is determined, in accordance with the foregoing opinion that: (1) The present high cost of living is not an emergency within the meaning of section 563 of the School Code of 1911, as amended, 24 PS §610; (2) that the Board of School Directors may not grant to the professional employes of said school district an increase in salary on account of the current high cost of living, which increase would cause the total appropriations contained in the budget for the current fiscal year to be exceeded; (3) that the board of school directors may not appropriate to the proper departments affected by the proposed increase the unanticipated revenue resulting from additional

tuition fees amounting approximately to $22,000, and (4) that the board of school directors may not transfer the sum of $5,000 from Department H-2, and $3,000 from Department H-5, both of which sums will remain unexpended during the fiscal year of 1946-1947, to such other departments as may be affected by the proposed increase in salaries.